THE UNITED STATES, PLAINTIFFS, v. WILLIAM S. ROGERS.

The United States have adopted the principle originally established by European nations, namely, that the aboriginal tribes of Indians in North America are not regarded as the owners of the territories which they respectively occupied. Their country was divided and parcelled out, as if it had been vacant and unoccupied land.

If the propriety of exercising this power were now an open question, it would be one for the law-making and political department of the government, and not the judicial.

The Indian tribes residing within the territorial limits of the United States are subject to their authority, and where the country occupied by them is not within the limits of any one of the States, Congress may, by law, punish any offence committed there, no matter whether the offender be a white man or an Indian.

The twenty-fifth section of the act of 30th June, 1834, extends the laws of the United States over the Indian country, with a proviso that they shall not include punishment for "crimes committed by one Indian against the person or property of another Indian."

This exception does not embrace the case of a white man who, at mature age, is adopted into an Indian tribe. He is not an "Indian," within the meaning of the law.

The treaty with the Cherokees, concluded at New Echota, in 1835, allows the Indian Council to make laws for their own people or such persons as have connected themselves with them. But it also provides, that such laws shall not be inconsistent with acts of Congress. The act of 1834, therefore, controls and explains the treaty.

It results from these principles, that a plea, set up by a white man, alleging that he had been adopted by an Indian tribe, and was not subject to the jurisdiction of the Circuit Court of the United States, is not valid.

THIS case came up, on a certificate of division, from the Circuit Court of the United States for the District of Arkansas.

At the April term, 1845, of the said Circuit Court, the grand jury indicted William S. Rogers for the murder of Jacob Nicholson. Both Rogers and Nicholson were alleged, in the indictment, to be "white men and not Indians." The offence was charged to have been committed within the jurisdiction of the court, that is to say, in that part of the Indian country west of the State of Arkansas that is bounded north by the north line of lands assigned to the Osage tribe of Indians, produced east to the State of Missouri, west by the Mexican possessions, south by Red River, and east by the west line of the now State of Arkansas and the State of Missouri (the same being territory annexed to the said District of Arkansas, for the purposes in the act of Congress in that behalf made and provided).

The defendant filed the following plea:—

"And the defendant in his own proper person, comes into court, and, having heard the said indictment read, says, that the court ought not to take further cognizance of the said prosecution, because, he says, heretofore, to wit, on the —— day of November, 1836, he then being a free white man and a citizen of the United States, and having been born in the said United States, voluntarily and of his free will removed to the portion of the country west of the State of Arkansas, assigned and belonging to the Cherokee

tribe of Indians, and did incorporate himself with said tribe, and from that time forward became and continued to be one of them, and made the same his home, without any intention of returning to the said United States ; and that afterwards, to wit, on the —— day of November, 1836, he intermarried with a Cherokee Indian woman, according to the forms of marriage, and that he continued to live with the said Cherokee woman, as his wife, until September, 1843, when she died, and by her had several children, now living in the Cherokee nation, which is his and their home.

" And the defendant further says, that, from the time he removed, as aforesaid, he incorporated himself with the said tribe of Indians as one of them, and was and is so treated, recognized, and adopted by said tribe and the proper authorities thereof, and exercised and exercises all the rights and privileges of a Cherokee Indian in said tribe, and was and is domiciled in the country aforesaid ; that, before                          and at the time of the commission of the supposed crime, if any such was committed, to wit, in the Indian country aforesaid, he, the defendant, by the acts aforesaid, became, and was, and still is, a citizen of the Cherokee nation, and became, and was, and still is, a Cherokee Indian, within the true intent and meaning of the act of Congress in that behalf provided.   And the said defendant further says, that the said Jacob Nicholson, long before the commission of said crime, if any such was committed, although a native-born free white male citizen of the United States, had settled in the tract of country assigned to said Cherokee tribe of Indians west of the State of Arkansas, without any intention of returning to said United States ; that he intermarried with an Indian Cherokee woman, according to the Cherokee form of marriage ; that he was treated, recognized, and adopted by the said tribe as one of them, and entitled to exercise, and did exercise, all the rights and privileges of a Cherokee Indian, and was permanently domiciled in said Indian country as his home, up to the time of his supposed murder.

" And the said defendant further says, that, by the acts aforesaid, he, the said Jacob Nicholson, was a Cherokee Indian at the time of the commission of the said supposed crime, within the true intent and meaning of the act of Congress in that behalf made and provided.   Wherefore the defendant says, that this court has no jurisdiction to cause the defendant to make a further or other answer to said bill of indictment, for said supposed crime alleged in the bill of indictment.   And the defendant prays judgment, whether he shall be held bound to further answer said indictment."

To this plea the District-Attorney of the United States filed the following demurrer.

" And the said United States, by Samuel H. Hempstead, Dis-

trict-Attorney, come and say, that the said first plea of the defendant to the jurisdiction of this honorable court is insufficient in law, and that, by reason of any thing therein contained, this court ought not to refuse to entertain further jurisdiction of the crime in said bill of indictment alleged.

"And the following causes of demurrer are assigned to said plea : —

"1st. That a native-born citizen of the United States cannot expatriate himself, so as to owe no allegiance to the United States, without some law authorizing him to do so.

"2d. That no white man can rightfully become a citizen of the Cherokee tribe of Indians, either by marriage, residence, adoption, or any other means, unless the proper authority of the United States shall authorize such incorporation.

"3d. That the proviso of the act of Congress, relating to crimes committed by one Indian upon the property or person of another Indian, was never intended to embrace white persons, whether married and residing in the Indian nation or not."

And, upon the argument of the said demurrer, the following questions arose, and were propounded for the decision of the court ; but the judges being divided in opinion upon the same, upon motion, ordered that they be entered of record, and certified to the next term of the Supreme Court of the United States for its opinion and decision thereupon.

1st. Was it competent for the accused, being a citizen of the United States, either under the fourth clause of the eighth section of the first article of the Constitution of the United States; or under any act of Congress passed in virtue of the Constitution of the United States, upon the subject of naturalization ; or in virtue of any admission, obligation, or duty incumbent upon the government of the United States, and implied by the said clause, section, and article of the Constitution'; or any of the said acts of Congress in reference to citizens of the United States, or to foreign governments, their subjects or citizens, upon the authority of the will and act of the accused, and without any form, mode, or condition prescribed by the government of the United States, — to divest himself of his allegiance to that government, and of his character of citizen of the United States ?

2d. Could the accused, as a citizen of the United States, or a resident within the same, possess the right or the power resulting from the nature and character of the civil and political institutions of the United States, or as appertaining to, and inherent in, him, as a free moral and political agent, or derived to him from the law of nature or from the law of nations, founded either upon natural right or upon convention, voluntarily and entirely put off his allegiance to, and his character of citizen of, the United States,

and transfer that allegiance and citizenship to any other government, state, or community ?

3d. Could the tribe of Indians residing without the limits of any one of the States, but within the territory of the United States, as set forth in the pleadings in this prosecution, and designated as the Cherokee tribe, and also as the Cherokee nation (and by whom the accused alleges that he has been adopted), be held and recognized, in reference to the government, and under the laws of the United States, as a separate and distinct government or nation, possessing political rights and powers such as authorize them to receive and adopt, as members of their state, the subjects or citizens of other states or governments, with the assent of such subjects or citizens, and particularly the citizens of the United States, and thereby to sever their allegiance and citizenship from the states or governments to which they previously appertained, and to naturalize such subjects or citizens, and make them exclusively or effectually members, subjects, or citizens of the said Indian tribe, with regard to civil and political rights and obligations ?

4th. Could the accused, by any act or assent of his own, combined with the acts, authority, or assent of the above-mentioned tribe, residing within the territory aforesaid, so change and put off his character, rights, and obligations as a citizen of the United States, as to become in his social, civil, and political relations and condition a Cherokee Indian ?

5th. Does the twenty-fifth section of the act of Congress of the 30th of June, 1834, entitled " An act to regulate trade and intercourse with the Indian tribes, and to preserve the peace of the frontiers," and the proviso to that section, limit the operation of the said act, and give effect to the said proviso, as to instances of crimes committed by natives of the Indian tribes of full blood, against native Indians of full blood only; or do the said section and proviso have reference also to Indians (natives), or others adopted by, and permanently resident within, the Indian tribes ; or have they relation to the progeny of Indians by whites or by negroes, or of whites or negroes by Indians, born or permanently resident within the Indian tribes and limits, or to whites or free negroes born and permanently resident in the tribes, or to negroes owned as slaves, and resident within the Indian tribes, whether procured by purchase, or there born the property of Indians ?

6th. Does the plea interposed by the accused in this prosecution, the facts whereof are admitted by the demurrer, constitute a valid objection to the jurisdiction of this court ?

The twenty-fifth section of the act of 1834, referred to in the fifth point certified, enacts as follows : — " That so much of the laws of the United States as provides for the punishment of crimes committed within any place within the sole and exclusive jurisdic-

tion of the United States shall be in force in the Indian country; *provided,* that the same shall not extend to crimes committed by one Indian against the person or property of another Indian."

The defendant moved the court for an order to discharge him from imprisonment, on the ground that the court were divided in opinion on his plea to the jurisdiction; but the court overruled the motion, and remanded him to the custody of the marshal.

The case came up to this court upon the points certified, and was argued by *Mr. Mason,* Attorney-General, on behalf of the United States.

Mr. Chief Justice TANEY delivered the opinion of the court.

This case has been sent here by the Circuit Court of the United States for the District of Arkansas, under a certificate of division of opinion between the justices of that court.

It appears by the record, that William S. Rogers, a white man, was indicted in the above-mentioned court for murder, charged to have been committed upon a certain Jacob Nicholson, also a white man, in the country now occupied and allotted by the laws of the United States to the Cherokee Indians.

The accused put in a special plea to the indictment, in which he avers, that, having been a citizen of the United States, he, long before the offence charged is supposed to have been committed, voluntarily removed to the Cherokee country, and made it his home, without any intention of returning to the United States, that he incorporated himself with the said tribe of Indians as one of them, and was so treated, recognized, and adopted by the said tribe, and the proper authorities thereof, and exercised all the rights and privileges of a Cherokee Indian in the said tribe, and was domiciled in their country; that by these acts he became a citizen of the Cherokee nation, and was, and still is, a Cherokee Indian, within the true intent and meaning of the act of Congress in that behalf made and provided; that the said Jacob Nicholson had in like manner become a Cherokee Indian, and was such at the time of the commission of the said supposed crime, within the true intent and meaning of the act of Congress in that behalf made and provided; and that therefore the court had no jurisdiction to cause the defendant to make a further or other answer to the said indictment.

This is the substance of the plea, and to this plea the attorney for the United States demurred, setting down the causes of demurrer which appear in the foregoing statement of the case.

Several questions have been propounded by the Circuit Court, which do not arise on the plea of the accused, and some of them we think cannot be material in the decision of the case, and need not therefore be answered by this court.

The country in which the crime is charged to have been committed is a part of the territory of the United States, and not with-

in the limits of any particular State. It is true that it is occupied by the tribe of Cherokee Indians. But it has been assigned to them by the United States, as a place of domicile for the tribe, and they hold and occupy it with the assent of the United States, and under their authority. The native tribes who were found on this continent at the time of its discovery have never been acknowledged or treated as independent nations by the European governments, nor regarded as the owners of the territories they respectively occupied. On the contrary, the whole continent was divided and parcelled out, and granted by the governments of Europe as if it had been vacant and unoccupied land, and the Indians continually held to be, and treated as, subject to their dominion and control.

It would be useless at this day to inquire whether the principle thus adopted is just or not ; or to speak of the manner in which the power claimed was in many instances exercised. It is due to the United States, however, to say, that while they have maintained the doctrines upon this subject which had been previously established by other nations, and insisted upon the same powers and dominion within their territory, yet, from the very moment the general government came into existence to this time, it has exercised its power over this unfortunate race in the spirit of humanity and justice, and has endeavoured by every means in its power to enlighten their minds and increase their comforts, and to save them if possible from the consequences of their own vices. But had it been otherwise, and were the right and the propriety of exercising this power now open to question, yet it is a question for the law-making and political department of the government, and not for the judicial. It is our duty to expound and execute the law as we find it, and we think it too firmly and clearly established to admit of dispute, that the Indian tribes residing within the territorial limits of the United States are subject to their authority, and where the country occupied by them is not within the limits of one of the States, Congress may by law punish any offence committed there, no matter whether the offender be a white man or an Indian. Consequently, the fact that Rogers had become a member of the tribe of Cherokees is no objection to the jurisdiction of the court, and no defence to the indictment, provided the case is embraced by the provisions of the act of Congress of the 30th of June, 1834, entitled " An act to regulate trade and intercourse with the Indian tribes, and to preserve the peace of the frontiers."

By the twenty-fifth section of that act, the prisoner, if found guilty, is undoubtedly liable to punishment, unless he comes within the exception contained in the proviso, which is, that the provisions of that section " shall not extend to crimes committed by one Indian against the person or property of another Indian." And we think it very clear, that a white man who at mature age is adopted in an Indian tribe does not thereby become an Indian, and was not

intended to be embraced in the exception above mentioned. He may by such adoption become entitled to certain privileges in the tribe, and make himself amenable to their laws and usages. Yet he is not an Indian ; and the exception is confined to those who by the usages and customs of the Indians are regarded as belonging to their race. It does not speak of members of a tribe, but of the race generally, — of the family of Indians ; and it intended to leave them both, as regarded their own tribe, and other tribes also, to be governed by Indian usages and customs. And it would perhaps be found difficult to preserve peace among them, if white men of every description might at pleasure settle among them, and, by procuring an adoption by one of the tribes, throw off all responsibility to the laws of the United States, and claim to be treated by the government and its officers as if they were Indians born. It can hardly be supposed that Congress intended to grant such exemptions, especially to men of that class who are most likely to become Indians by adoption, and who will generally be found the most mischievous and dangerous inhabitants of the Indian country.

It may have been supposed, that the treaty of New Echota, made with the Cherokees in 1835, ought to have some influence upon the construction of this act of Congress, and extend the exception to all the adopted members of the tribe. But there is nothing in the treaty in conflict with the construction we have given to the law. The fifth article of the treaty stipulates, it is true, that the United States will secure to the Cherokee nation the right, by their national councils, to make and carry into effect such laws as they may deem necessary for the government and protection of the persons and property within their own country, belonging to their people, or such persons as have connected themselves with them. But a proviso immediately follows, that such laws shall not be inconsistent with the Constitution of the United States, and such acts of Congress as had been, or might be, passed, regulating trade and intercourse with the Indians. Now the act of Congress under which the prisoner is indicted had been passed but a few months before, and this proviso in the treaty shows that the stipulation above mentioned was not intended or understood to alter in any manner its provisions, or affect its construction. Whatever obligations the prisoner may have taken upon himself by becoming a Cherokee by adoption, his responsibility to the laws of the United States remained unchanged and undiminished. He was still a white man, of the white race, and therefore not within the exception in the act of Congress.

We are, therefore, of opinion, that the matters stated in the plea of the accused do not constitute a valid objection to the jurisdiction of the court, and that, if he is found guilty upon the indictment, he is liable to the punishment provided by the act of Congress before referred to, and is not within the exception in relation to Indians.

And we shall direct this opinion to be certified to the Circuit Court, as the answer to the several questions stated in the certificate of division. We abstain from giving a specific answer to each question, because, as we have already said, some of them do not appear to arise out of the case, and, upon questions of that description, we deem it most advisable not to express an opinion.