WADKINS v. STATE

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:WADKINS v. STATE

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

WADKINS v. STATE2022 OK CR 2Case Number: F-2018-790Decided: 01/20/2022ROBERT ERIC WADKINS, Appellant v. THE STATE OF OKLAHOMA, Appellee.
Cite as: 2022 OK CR 2, __ __

 

O P I N I O N

ROWLAND, PRESIDING JUDGE:

¶1 Appellant Robert Eric Wadkins appeals his Judgment and Sentence from the District Court of Choctaw County, Case No. CF-2017-126, for First Degree Rape (Count 1), in violation of 21 O.S.2011, §§ 1114 and 1115 and Kidnapping (Count 2), in violation of 21 O.S.Supp.2012, § 741, each after former conviction of two or more felonies. The Honorable Gary L. Brock, Special Judge, presided over Wadkins's jury trial and sentenced Wadkins, in accordance with the jury's verdict, to forty years imprisonment on Count 1 and five years imprisonment on Count 2, to be served consecutively. Wadkins raises seven claims on appeal. We find relief is required on Wadkins's jurisdictional challenge in Proposition 1, rendering his other claims moot.

1. Jurisdiction

¶2 We must decide whether Wadkins sufficiently demonstrated he qualifies as Indian and thus was not subject to the jurisdiction of Oklahoma's courts. Wadkins claims Oklahoma lacked jurisdiction because he is Indian and the charged crimes occurred in Indian country. McGirt v. Oklahoma, 140 S.Ct. 2452 (2020). In McGirt, the Supreme Court held the reservation Congress established for the Muscogee (Creek) Nation remains in existence today because Congress has never explicitly disestablished it. That ruling meant Oklahoma lacked jurisdiction to prosecute McGirt, an Indian, because he committed his crimes on the Creek Reservation, i.e., in Indian country, and the federal government has jurisdiction of such criminal matters under the federal Indian Major Crimes Act (IMCA), 18 U.S.C. § 1153. In light of McGirt, we remanded this case to the district court to conduct an evidentiary hearing to determine: (1) Wadkins's Indian status; and (2) whether the crime occurred in Indian country pursuant to United States v. Diaz, 679 F.3d 1183, 1187 (10th Cir. 2012); United States v. Prentiss, 273 F.3d 1277, 1280 (10th Cir. 2001); Goforth v. State, 1982 OK CR 48, ¶ 6, 644 P.2d 114, 116.

¶3 There is no dispute that the charged rape and kidnapping took place in Indian Country, i.e., the Choctaw Reservation.1 This claim turns on the district court's resolution of the first question on remand, namely Wadkins's Indian status.2 Indian status has two components. Defendants, like Wadkins, must produce prima facie evidence that: (1) he or she has some Indian blood; and (2) he or she was recognized as an Indian by a tribe or the federal government. See State v. Klindt, 1989 OK CR 75, ¶ 5, 782 P.2d 401, 403 (holding a defendant has the burden to prove his or her Indian status for dismissal based on lack of state jurisdiction). The parties agree that Wadkins has some Indian blood and satisfies the first prong of the Indian status test. Indian blood alone, however, is insufficient to warrant federal criminal jurisdiction because "jurisdiction over Indians in Indian country does not derive from a racial classification but from the special status of a formerly sovereign people." St. Cloud v. United States, 702 F.Supp. 1456, 1461 (D.S.D. 1988). Within the ambit of federal criminal jurisdiction, the term "Indian" "includes both racial and political components of the Indian community." Parker v. State, 2021 OK CR 17, ¶ 39, 495 P.3d 653, 666. The recognition prong "in essence probes whether the Native American has a sufficient non-racial link to a formerly sovereign people." St. Cloud, 702 F.Supp. at 1461. While recognition is often proven by evidence of tribal membership, Parker, 2021 OK CR 17, ¶ 36, 495 P.3d at 666, recognition is in dispute in this case because Wadkins, although presently a citizen of the Choctaw Nation, was not a member when the charged offenses occurred.

¶4 At the evidentiary hearing, the district court accepted the parties' Agreed Stipulation that: (1) the locations of the charged crimes are within the historical boundaries of the Choctaw Nation; (2) the Choctaw Nation is a federally recognized tribe; (3) Wadkins has some Indian blood; and (4) he became an enrolled member of the Choctaw Nation after the commission of the charged offenses. The evidentiary portion of the hearing focused on whether or not Wadkins was recognized by the Choctaws at the time of the charged offenses. The district court heard from three witnesses, including Wadkins, and took the matter under advisement. It later concluded that Wadkins failed to show through his testimony and admitted exhibits that he was recognized as Indian by the Choctaws or the federal government at the time of the crimes. The district court issued written Findings of Fact and Conclusions of Law, memorializing its ruling, stating:

1. The parties entered into a stipulation that Mr. Wadkins has a Certificate of Degree of Indian Blood (CDIB). That degree is 3/16 Indian blood of the Choctaw Tribe.
2. Mr. Wadkins was not an enrolled member of the Choctaw Tribe at the time of the offense. He did not possess a CDIB Card, nor had he applied for one.
3. Mr. Wadkins was convicted in May of 2018. He did not become an enrolled member of the Choctaw Nation of Oklahoma until October 9, 2020. The Defendant now has a Choctaw Nation Membership Card.
4. This Court finds that at the time the crime was committed by Mr. Wadkins [he was not recognized as Indian because of his] failure to seek membership in the Choctaw Nation until after the conviction, [his] voluntary associations with the "Universal Aryan Brotherhood" (a white supremacist gang), his unfamiliarity with who tribal leaders were, [the] lack of any credible evidence that any benefits he may have received from the tribe were exclusive to members of the Choctaw Nation, [and] no credibel (sic) evidence that the Defendant had social recognition as an Indian through living on a reservation and participating in Indian social life.

¶5 Based upon these findings, the district court concluded that Wadkins failed to meet "the standards set forth in the Rogers Test." Although it concluded the crimes occurred in Indian country, the district court concluded "Mr. Wadkins' status was not Indian at the commission of the offense or Trial or for the purpose of denying the State of Oklahoma jurisdiction."

¶6 We set forth our standard of review of a district court's rulings involving Indian country jurisdiction in Parker:

We afford a district court's factual findings that are supported by the record great deference and review those findings for an abuse of discretion. Young v. State, 2000 OK CR 17, ¶ 109, 12 P.3d 20, 48. We decide the correctness of legal conclusions based on those facts without deference. See Gomez v. State, 2007 OK CR 33, ¶ 5, 168 P.3d 1139, 1141-42 (reviewing a trial court's ruling on a motion to suppress evidence based on a complaint of an illegal search and seizure with deference to the trial court's factual findings unless not supported by competent evidence and a trial court's legal conclusions based on those facts de novo); Salazar v. State, 2005 OK CR 24, ¶ 19, 126 P.3d 625, 630 (giving district court's factual findings strong deference, but deciding without deference ultimate claim of trial counsel effectiveness).

Parker, 2021 OK CR 17, ¶ 34, 495 P.3d at 665.

¶7 Wadkins maintains on appeal that his subsequent tribal enrollment coupled with his membership eligibility at the time of the charged offenses is sufficient to prove recognition. The State, on the other hand, asks us to adopt a "bright line" test which bases recognition solely on tribal enrollment at the time of the offense(s). In Parker, we rejected a claim that eligibility alone was sufficient to establish tribal recognition and upheld the district court's ruling that Parker failed to prove the recognition prong of the Indian status test. Id. 2021 OK CR 17, ¶¶ 37-42, 495 P.3d at 666-67. We also rejected the State's plea to adopt a "bright line" test basing recognition solely on tribal enrollment at the time of the offense. Id. 2021 OK CR 17, ¶ 37, 495 P.3d at 666. We accepted as settled that a person may be Indian for purposes of federal criminal jurisdiction whether or not the person is formally enrolled in any tribe and cited with approval the factors (sometimes referred to as the St. Cloud factors) that most courts consider in some fashion in determining recognition. Id. 2021 OK CR 17, ¶¶ 36, 40, 495 P.3d at 665, 666. See also United States v. Bruce, 394 F.3d 1215, 1224-25 (9th Cir. 2005) (citing numerous cases holding that lack of enrollment is not determinative of recognition); United States v. Drewry, 365 F.3d 957, 961 (10th Cir. 2004), vacated on other grounds by Drewry v. United States, 543 U.S. 1003 (2005) (affirming tribal enrollment is not the only way to prove a person is Indian for federal criminal jurisdiction); St. Cloud, 702 F.Supp. at 1461 (accepting a person may still be an Indian though not enrolled with a recognized tribe). The factors courts consider for Indian recognition are:

1) tribal enrollment; 2) government recognition formally and informally through receipt of assistance reserved only to Indians; 3) enjoyment of the benefits of tribal affiliation; and 4) social recognition as an Indian through residence on a reservation and participation in Indian social life.

Parker, 2021 OK CR 17, ¶ 40, 495 P.3d at 666. See also Bruce, 394 F.3d at 1224; Drewry, 365 F.3d at 961.3

 

¶8 The district court considered these factors and found that all the factors weighed against recognition.4 The district court gave no weight to Wadkins's tribal eligibility or subsequent enrollment. It found Wadkins's admitted medical records showing receipt of Indian health services throughout his life of little weight because such care is not reserved exclusively to tribal members. It also gave little, if any, weight to his testimony about his involvement with tribal social life, finding his testimony self-serving and opportunistic.5 It gave significant weight to Wadkins's nine year membership (2000-2009) in the Universal Aryan Brotherhood prison gang, his misidentification of the Choctaw tribal chief, and his lack of a CDIB card at the time of the charged offenses.

 

¶9 Our review of the record shows that the district court erred in holding Wadkins failed to satisfy the recognition prong of the Indian status test. Wadkins presented ample prima facie evidence he is an Indian. "Prima facie evidence is evidence that is 'good and sufficient on its face,' i.e., 'sufficient to establish a given fact, or the group or chain of facts constituting the defendant's claim or defense, and which if not rebutted or contradicted, will remain sufficient to sustain a judgment in favor of the issue which it supports.'" Cuesta-Rodriguez v. State, 2011 OK CR 4, ¶ 7, 247 P.3d 1192, 1195 (quoting Black's Law Dictionary 1190 (6th ed. 1990)).

A. Tribal Enrollment

¶10 Tribal enrollment is the first factor in the Indian recognition analysis. Tribal membership is generally dispositive of recognition. United States v. Nowlin, 555 Fed.Appx 820, 823 (10th Cir. 2014) (observing first factor is dispositive if the defendant is an enrolled tribal member). The evidence showed Wadkins received his formal tribal membership card from the Choctaw Nation in December 2020, after the commission of the instant offenses. He testified, without dispute, that he attempted to apply for a membership card nearly twenty years earlier, but was unable to complete the process because he was not yet eighteen and could not sign the application on his own.

¶11 Although Wadkins was not an enrolled member of the Choctaw Nation until 2020, he testified, without challenge, that he had a Certificate of Degree of Indian Blood (CDIB) card with reference numbers since infancy.6 Wadkins also testified that his CDIB number was the same as the number on his Tribal Membership Card. Notably, the State did not refute Wadkins's assertions about his CDIB card nor object to them. Instead, the State accepted, for all intents and purposes, that Wadkins possessed a CDIB card. The district court's conclusion that Wadkins did not possess a CDIB card and had not applied for one is therefore not supported by the record.

B. Receipt of Government Assistance Reserved for Indians

¶12 Formal or informal government recognition of an Indian may be established through receipt of assistance reserved only for Indians. Here, Wadkins received a CDIB card from the Choctaw Nation in infancy which he used to access medical care at Choctaw medical facilities for more than twenty years. He testified that he presented his CDIB card and was not charged for his treatment at Choctaw medical facilities. Wadkins's admitted medical records listed his information as "Tribe: CHOCTAW NATION OF OKLAHOMA" and "Eligibility: CHS & DIRECT" (Def. Exh. 2, pp 9-11, 13-29). While his medical records showed treatment at Choctaw facilities dating back to 1997, Wadkins's most recent medical treatment at tribal medical centers in 2017 occurred approximately six weeks before and six weeks after the charged offenses.

¶13 To show the medical services were reserved to Indians only, Wadkins admitted the Choctaw Nation's "Eligibility for Services" webpage. According to the webpage, eligibility for care at Choctaw Nation Health Service facilities is reserved exclusively for Native Americans with a few exceptions (Def. Exh. 3). A Native American must present a CDIB card, membership card, or letter of descendancy from a federally recognized tribe to be eligible for free health services. Non-Indians can receive services under a few enumerated exceptions--emergencies, adopted/step/foster children of an eligible parent, and non-eligible spouses.7 Wadkins received treatment as an eligible Native American as stated in his medical records and not under any exceptions (Def. Exh. 2). Courts have accepted evidence of consistent medical treatment of an eligible Native American at an Indian health facility as sufficient proof of government recognition by providing assistance reserved solely for Indians. Compare United States v. Stymiest, 581 F.3d 759, 765-66 (8th Cir. 2009) (observing Indian Health Service (IHS) doctors must provide emergency care to any patient but non-tribal member defendant's use of IHS clinic's non-emergent care showed he was an Indian); United States v. Keys, 103 F.3d 758, 761 (9th Cir. 1996) (holding non-tribal member child victim's receipt of medical services at Indian hospital was a factor in establishing she was Indian) with State v. Nobles, 373 N.C. 471, 481--82, 838 S.E.2d 373, 380 (N.C. 2020), cert. denied, 141 S.Ct. 365 (2020) (holding evidence of five childhood visits to Indian hospital insufficient to establish non-tribal member defendant's recognition as Indian as an adult). Contrary to the district court's finding, the kind of free, non-emergent care provided to Wadkins as an adult was based on his status as a recognized Indian by the tribe and such care, based on the evidence, is exclusive to Indians.

C. Benefits of Tribal Affiliation

¶14 Enjoyment of benefits of tribal affiliation may also be used to show recognition. Here, as discussed above, Wadkins had a CDIB card which gave him the benefit of free non-emergent medical care at Choctaw medical facilities. The CDIB card also served as his primary identification because he never had a driver's license or state identification. Wadkins testified that he received school supplies, books, clothes, and food from the tribe as a teenager. He also received the assistance of a tribal case manager or social worker in applying for official tribal membership. Admittedly there are many benefits of tribal affiliation that Wadkins did not enjoy (tribal employment, hunting and fishing rights, voting in tribal elections, etc.), but the record shows he has been unable to do so because of his lengthy incarceration over the past twenty years. The tribal benefits he might have accrued are unavailable while incarcerated.

D. Social Recognition

¶15 Social recognition is also a consideration. Here, Wadkins testified about social recognition as an Indian because of his participation in Indian social life. He had a red-tail hawk feather in his possession at the time of his arrest. He said it signified guidance and protection for him. Wadkins's mother (now deceased) and brother are enrolled members of the Choctaw Nation along with various aunts, uncles, and cousins. He attended multiple powwows outside of prison and at least one sweat lodge ceremony while in prison. He created Native American art, and learned various Choctaw language phrases and alphabet letters from his mother. Furthermore, he held himself out as Indian.

¶16 The Tenth Circuit has determined that the St. Cloud factors "are not exclusive." Nowlin, 555 Fed.Appx. at 823. In addition to the forgoing evidence, Wadkins also presented evidence that he is identified as Native American by the State of Oklahoma and the Department of Corrections (DOC) as exhibited on both his custody assessment form at intake from his first arrest and his current DOC badge. He also testified he was given a green tag in prison that identified him as Native American even while he was a member of the Universal Aryan Brotherhood (UAB). Although a nine-year member of the UAB, Wadkins testified that during his affiliation, the UAB and Indian Brotherhood were aligned. He explained that he did not join the Indian Brotherhood because he did not meet the group's length of incarceration requirement for membership. He maintained his membership in the UAB did not alter his identification as Indian because he is bi-racial (both white and Indian). He left the UAB approximately eight years before the instant offenses and covered his UAB affiliated tattoos.

¶17 The State's evidence did not refute Wadkins's evidence of recognition in any meaningful way. The State called one witness, namely Michael Williams, a special agent with the Department of Corrections with expert knowledge of the current prison gangs. Williams testified that the UAB is a white supremacist gang. While there are presently five to ten Native American gangs, he admitted the only Indian gang in existence when Wadkins first went to prison was the Indian Brotherhood. He was unaware of any present affiliation between the UAB and Indian Brotherhood gangs, but admitted gangs sometimes align. He confirmed that DOC records reflected that Wadkins is a former member of the UAB and that Wadkins's UAB tattoos have been defaced. His testimony neither refuted Wadkins's evidence of tribal recognition nor showed Wadkins's membership in the UAB was a renouncement of his Indian status.

¶18 The district court's conclusion--that Wadkins failed to establish recognition--is not supported by the record. While eligibility for tribal membership alone is insufficient to prove recognition, Wadkins's subsequent enrollment coupled with the other factors, specifically his possession of a CDIB card since childhood and receipt of Indian health services, showed he was recognized as Indian by the Choctaw Nation. Because he is an Indian for purposes of federal criminal law and the charged crimes occurred in Indian Country, the State lacked jurisdiction over this matter.

DECISION

¶19 The Judgment and Sentence of the district court is VACATED and the matter is REMANDED WITH INSTRUCTIONS TO DISMISS. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2021), the MANDATE is ORDERED to issue in twenty (20) days from the delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT
OF CHOCTAW COUNTY
THE HONORABLE GARY L. BROCK, SPECIAL JUDGE

APPEARANCES AT TRIAL

J. ELIZABETH GRIFFITH
ATTORNEY AT LAW
113 NORTH CENTRAL AVE.
IDABEL, OK 74745
COUNSEL FOR DEFENDANT

APPEARANCES ON APPEAL

KIMBERLY D. HEINZE
OKLAHOMA INDIGENT
DEFENSE SYSTEM
P.O. BOX 926
NORMAN, OK 73070
COUNSEL FOR APPELLANT

JEFF MIXON
ASST. DISTRICT ATTORNEY
300 EAST DUKE
HUGO, OK 74743
COUNSEL FOR STATE

MIKE HUNTER
ATTY. GENERAL OF OKLAHOMA
TESSA L. HENRY
ASST. ATTORNEY GENERAL
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 73105
COUNSEL FOR APPELLEE

 

APPEARANCES ON REMAND

CHAD JOHNSON
OKLAHOMA INDIGENT
DEFENSE SYSTEM
P.O. BOX 926
NORMAN, OK 73070
COUNSEL FOR DEFENDANT/APPELLANT

DAWN CASH
ACTING ATTORNEY GENERAL
OF OKLAHOMA
TESSA L. HENRY
JOSHUA LOCKETT
ASST. ATTORNEYS GENERAL
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 73105
COUNSEL FOR STATE

JACOB KEYES
ATTORNEY AT LAW
CHOCTAW NATION OF OKLAHOMA
1802 CHUKKA HINA
DURANT, OK 74701
AMICUS CURIAE

OPINION BY: ROWLAND, P.J.
HUDSON, V.P.J.: Specially Concur
LUMPKIN, J.: Concur in Results
LEWIS, J.: Concur

FOOTNOTES

1 In Sizemore v. State, 2021 OK CR 6, ¶¶ 14-16, 485 P.3d 867, 870-71, the Court held that Congress established a reservation for the Choctaw Nation and that it remains in existence because Congress has not disestablished it. Hence, the Choctaw Nation Reservation is Indian country.

2 The Indian status test is often referred to as the Rogers test because it is derived from United States v. Rogers, 45 U.S. 567 (1846) (holding a white man could not become an Indian despite the man's adoption into the Cherokee Indian Tribe).

3 The Tenth Circuit uses a totality of the evidence approach in its determination of Indian status. Diaz, 679 F.3d at 1187. The Ninth Circuit considers these factors exclusively for recognition. United States v. Zepeda, 792 F.3d 1103, 1114 (9th Cir. 2015). The Eighth Circuit considers all relevant facts for recognition in no order of importance. United States v. Stymiest, 581 F.3d 759, 764 (8th Cir. 2009). The court in St. Cloud considered these factors for recognition in declining order of importance. St. Cloud, 702 F.Supp. at 1461.

4 In its conclusions, the district court stated it used the St. Cloud factors as a "guide" in its analysis of the second prong of the Rogers test.

5 Wadkins did not produce documentary evidence to support his testimony about his tribal affiliation with the exception of his medical records.

6 Wadkins testified:

I had two identification cards [issued by the Choctaw Nation]. One was a blue one and a white one. I've had them since I was an infant. They're for my CDIB reference numbers. It's the same number that's on my membership card, which is XXXXXX, and it will give you the degree of Indian blood, which would be three-sixteenths. It's the same information as before, and those were different. They were laminated. One was blue, one was white; one's for when you're a child, and then another is for you to sign when you become an adult....And I've had them all my life.

7 Non-eligible spouses qualify for limited services on a fee basis. Emergent care is also provided on a fee basis.

 

 

HUDSON, VICE PRESIDING JUDGE: SPECIALLY CONCURS

¶1 Today's decision dismisses convictions for first degree rape and kidnapping from the District Court of Choctaw County based on the Supreme Court's decision in McGirt v. Oklahoma, 140 S. Ct. 2452 (2020). This decision is unquestionably correct as a matter of stare decisis. The record shows Appellant had some Indian blood and was recognized as an Indian by a tribe and/or the federal government at the time of the crimes. The record further shows the crimes in this case took place within the historic boundaries of the Choctaw Reservation. Under McGirt, the State has no jurisdiction to prosecute Appellant for the crimes in this case. Instead, Appellant must be prosecuted in federal court where the exclusive jurisdiction for these crimes lies. See Roth v. State, 2021 OK CR 27, 499 P.3d 23. I therefore as a matter of stare decisis fully concur in today's decision.

¶2 Further, I maintain my previously expressed views on the significance of McGirt, its far-reaching impact on the criminal justice system in Oklahoma and the need for a practical solution by Congress. See, e.g., State v. Lawhorn, 2021 OK CR 37, 499 P.3d 777. (Hudson, V.P.J., Specially Concurs); Sizemore v. State, 2021 OK CR 6, 485 P.3d 867 (Hudson, J., Concur in Results).

 

 

LUMPKIN, JUDGE: CONCURRING IN RESULTS:

¶1 Bound by my oath and the Federal-State relationships dictated by the U.S. Constitution, I must at a minimum concur in the results of this opinion. While our nation's judicial structure requires me to apply the majority opinion in the 5-4 decision of the U.S. Supreme Court in McGirt v. Oklahoma, __ U.S. __, 140 S. Ct. 2452 (2020), I do so reluctantly. Upon the first reading of the majority opinion in McGirt, I initially formed the belief that it was a result in search of an opinion to support it. Then upon reading the dissents by Chief Justice Roberts and Justice Thomas, I was forced to conclude the Majority had totally failed to follow the Court's own precedents, but had cherry picked statutes and treaties, without giving historical context to them. The Majority then proceeded to do what an average citizen who had been fully informed of the law and facts as set out in the dissents would view as an exercise of raw judicial power to reach a decision which contravened not only the history leading to the disestablishment of the Indian reservations in Oklahoma, but also willfully disregarded and failed to apply the Court's own precedents to the issue at hand.

¶2 My quandary is one of ethics and morality. One of the first things I was taught when I began my service in the Marine Corps was that I had a duty to follow lawful orders, and that same duty required me to resist unlawful orders. Chief Justice Roberts's scholarly and judicially penned dissent, actually following the Court's precedents and required analysis, vividly reveals the failure of the majority opinion to follow the rule of law and apply over a century of precedent and history, and to accept the fact that no Indian reservations remain in the State of Oklahoma.1 The result seems to be some form of "social justice" created out of whole cloth rather than a continuation of the solid precedents the Court has established over the last 100 years or more.

¶3 The question I see presented is should I blindly follow and apply the majority opinion or do I join with Chief Justice Roberts and the dissenters in McGirt and recognize "the emperor has no clothes" as to the adherence to following the rule of law in the application of the McGirt decision?

¶4 My oath and adherence to the Federal-State relationship under the U.S. Constitution mandate that I fulfill my duties and apply the edict of the majority opinion in McGirt. However, I am not required to do so blindly and without noting the flaws of the opinion as set out in the dissents. Chief Justice Roberts and Justice Thomas eloquently show the Majority's mischaracterization of Congress's actions and history with the Indian reservations. Their dissents further demonstrate that at the time of Oklahoma Statehood in 1907, all parties accepted the fact that Indian reservations in the state had been disestablished and no longer existed. I take this position to adhere to my oath as a judge and lawyer without any disrespect to our Federal-State structure. I simply believe that when reasonable minds differ they must both be reviewing the totality of the law and facts.

FOOTNOTES

1 Senator Elmer Thomas, D-Oklahoma, was a member of the Senate Committee on Indian Affairs. After hearing the Commissioner's speech regarding the Indian Reorganization Act (IRA) in 1934, Senator Thomas opined as follows:

I can hardly see where it (the IRA) could operate in a State like mine where the Indians are all scattered out among the whites and they have no reservation, and they could not get them into a community without you would go and buy land and put them on it. Then they would be surrounded very likely with thickly populated white sections with whom they would trade and associate. I just cannot get through my mind how this bill can possibly be made to operate in a State of thickly-settled population. (emphasis added).

John Collier, Commissioner of Indian Affairs, Memorandum of Explanation (regarding S. 2755), p. 145, hearing before the United States Senate Committee on Indian Affairs, February 27, 1934. Senator Morris Sheppard, D-Texas, also on the Senate Committee on Indian Affairs, stated in response to the Commissioner's speech that in Oklahoma, he did not think "we could look forward to building up huge reservations such as we have granted to the Indians in the past." Id. at 157. In 1940, in the Foreword to Felix S. Cohen, Handbook of Federal Indian Law (1942), Secretary of the Interior Harold Ickes wrote in support of the IRA, "[t]he continued application of the allotment laws, under which Indian wards have lost more than two-thirds of their reservation lands, while the costs of Federal administration of these lands have steadily mounted, must be terminated." (emphasis added).

 

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Court of Criminal Appeals Cases
 CiteNameLevel

 1989 OK CR 75, 782 P.2d 401, STATE v. KLINDTDiscussed
 2005 OK CR 24, 126 P.3d 625, SALAZAR v. STATEDiscussed
 2007 OK CR 33, 168 P.3d 1139, GOMEZ v. STATEDiscussed
 2011 OK CR 4, 247 P.3d 1192, CUESTA-RODRIGUEZ v. STATEDiscussed
 2021 OK CR 6, 485 P.3d 867, SIZEMORE v. STATEDiscussed at Length
 2021 OK CR 17, 495 P.3d 653, PARKER v. STATEDiscussed at Length
 2021 OK CR 27, 499 P.3d 23, ROTH v. STATECited
 2021 OK CR 37, 499 P.3d 777, STATE v. LAWHORNCited
 1982 OK CR 48, 644 P.2d 114, GOFORTH v. STATEDiscussed
 2000 OK CR 17, 12 P.3d 20, 71 OBJ 2286, Young v. StateDiscussed
Title 21. Crimes and Punishments
 CiteNameLevel

 21 O.S. 741, KidnappingCited
 21 O.S. 1114, Rape in First Degree - Second DegreeCited

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA