# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2155

_____

United States of America,         \*
                                          \*

      Plaintiff - Appellee,     \*
                                          \*   Appeal from the United States

v.                            \*   District Court for the
                                          \*   Eastern District of Missouri.

William Carr, also known as Isaac   \*
Jenkins,                              \*
                                          \*

      Defendant - Appellant.    \*

_____

Submitted: December 9, 2008
Filed: March 26, 2009

_____

Before LOKEN, Chief Judge, BEAM and ARNOLD, Circuit Judges.

_____

LOKEN, Chief Judge.

A jury convicted William Charles Carr, who is called Charles, of conspiring to possess with intent to distribute approximately ten kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. He appeals, arguing that the district court[1] abused its discretion in admitting evidence he was carrying a loaded firearm and a false identification card at the time of his arrest, and that the evidence was insufficient to support his conviction. We affirm.

---

[1]The HONORABLE CHARLES A. SHAW, United States District Judge for the Eastern District of Missouri.

We summarize the evidence at trial in the light most favorable to the jury's verdict. See United States v. Van, 543 F.3d 963, 964 (8th Cir. 2008). On December 8, 2000, while working at a UPS facility in Earth City, Missouri, Postal Inspector Bryan Witt noticed a suspicious-looking package addressed to the Loose Ends Barber Shop in St. Louis, and showing as the return address a hotel in Hollywood, California. A narcotics dog alerted to the package, Inspector Witt obtained a search warrant, and a search of the package uncovered 10.8 kilograms of cocaine. Inspector Witt replaced most of the cocaine with flour, installed a court-ordered beeper device, resealed the package as it had arrived from California, and arranged for St. Louis County Detective Gary Sodoma, disguised as a UPS deliveryman, to make a controlled delivery to the Loose Ends Barber Shop.

Late that afternoon, Sodoma entered the barber shop and delivered the package to Loose Ends owner Hercules Lacy, with a large contingent of postal inspectors, DEA agents, and police officers surrounding the barber shop to stop anyone who tried to leave with the package. Lacy signed for the package with his own name and the name of Manuel Carr, Charles Carr's brother. A few minutes later, Carr arrived with his six-year-old son, ostensibly to get the boy a haircut. About thirty minutes after the package was delivered, Michael McGill arrived and parked in a lot behind the shop, driving a car registered to Caroline Nelson, Charles and Manuel Carr's mother. McGill walked around to the front of the shop.

A few minutes later, Inspectors Witt and Stephen Dowd, concealed in a van parked in the lot, saw Carr and McGill exit the rear door, with Carr carrying the package. McGill opened the trunk of his car, and Carr placed the package inside. McGill walked to the driver's side of the car and opened the door, while Carr walked along the passenger side, away from the barber shop. Fearing they would leave with the package, Witt exited the van, shouted "Police," and directed Carr and McGill to put their hands up. Both suspects fled, McGill toward a fence on the north end of the parking lot, where Witt apprehended him, and Carr into the barber shop. Police

entered the busy barber shop through both entrances and arrested Carr, seizing a loaded nine-millimeter pistol and a small quantity of marijuana. Carr identified himself as "Isaac Jenkins" and produced a genuine Missouri non-driver's ID card in this fictitious name. McGill identified himself as Anthony Wilkes and produced a genuine Missouri ID in this fictitious name. At the police station, Carr revealed his real name. Both suspects were released.

Inspector Witt's further investigation revealed that Manuel Carr and a fourth person, Heath Christian, sent a series of packages in late 2000 and early 2001 between St. Louis and various Los Angeles-area hotels, using fictitious names and St. Louis addresses. In February 2001, Witt intercepted one package en route from St. Louis to a Hyatt hotel in Hollywood. It contained $107,500 cash. Analysis of the handwriting matched that on the package delivered to Loose Ends two months earlier. Investigators also learned that Christian's pager number, which was used in shipping several later packages, was the same number McGill gave authorities when he was arrested at Loose Ends.

Based on Inspector Witt's investigation, a one-count indictment issued in September 2001 charging Manuel and Charles Carr, Christian, and McGill with conspiracy to possess with the intent to distribute approximately ten kilograms of cocaine. Post-indictment searches of residences associated with Christian, McGill, and Manuel Carr yielded several handguns, an assault rifle, and notes referring to the seizures of the cocaine in December 2000 and the cash in February 2001. Manuel Carr, Christian, and McGill pleaded guilty soon after their indictment. Deputy Marshal Jason Batson testified that the Marshals Service searched for Carr from 2003 until May 2007, when he was arrested in California, where he was living and working under his own name.

At Carr's trial, Loose Ends owner Lacy testified that Manuel Carr had called two days before Friday, December 8, and said that he had sent a package of clothing

from California to the barber shop, it would arrive on Friday, and McGill would pick it up. Inspector Witt testified that each of the four conspirators had obtained an authentic ID card from either Missouri or Illinois bearing his picture and a fictitious name, a process involving "some degree of complexity" because States require applicants to produce documents such as a birth certificate. Witt further testified that both Carr brothers listed Loose Ends as their place of employment on several official documents; the shop's former owner testified that neither had ever worked there. None of Carr's co-defendants testified, no confidential informant testified, and the government introduced no evidence directly linking Carr to any other shipment or to the co-defendant residences where guns and drug notes were found. The only evidence that Carr was involved with his co-defendants after December 8, 2000, was Inspector Witt's testimony that McGill told police Carr moved to California in 2001 following a falling-out with his brother over money.

1. On appeal, Carr first argues that the district court abused its discretion by admitting evidence he was carrying a firearm and a false ID card when arrested because the probative value of this evidence was "substantially outweighed by the danger of unfair prejudice." Fed. R. Ev. 403. This contention is without merit. Without question, the fact that Carr was carrying a loaded firearm when he carried ten kilograms of cocaine to McGill's car was relevant to the charge that he knowingly participated in a drug conspiracy offense. See United States v. Ruiz, 412 F.3d 871, 881 (8th Cir.), cert. denied, 546 U.S. 994 (2005). The use of false identification "is relevant and admissible to show consciousness of guilt," United States v. Eggleton, 799 F.2d 378, 381 (8th Cir. 1986), and in this case the use of similar false IDs tended to link the four conspirators. Even if prejudicial, the impact of this evidence was not *unfair* prejudice. See United States v. Pirani, 406 F.3d 543, 555 (8th Cir.) (en banc), cert. denied, 546 U.S. 909 (2005). Moreover, the government stipulated that the firearm was not stolen and had not been involved in any other crimes, which ameliorated any risk of unfair prejudice. The district court did not abuse its discretion

in admitting this evidence. See United States v. Abumayyaleh, 530 F.3d 641, 649 (8th Cir. 2008) (standard of review).

2. A more difficult issue is whether, as Carr argues, the district court erred in denying his motion for judgment of acquittal because the government proved only "that Carr helped carry the UPS package outside [the barber shop] for a few brief seconds." Though convicted of conspiracy, Carr relies solely on cases where we reversed convictions for possession with intent to distribute drugs -- here, the uncharged substantive offense that was the object of the conspiracy -- because the government proved only the "mere presence" of the defendant at the crime scene. See United States v. Scofield, 433 F.3d 580, 586 (8th Cir.), cert. denied, 547 U.S. 1215 (2006); United States v. Hernandez, 301 F.3d 886, 890-92 (8th Cir. 2002); United States v. Pace, 922 F.2d 451, 452-53 (8th Cir. 1990). Carr does not contend the government adduced insufficient evidence of a drug trafficking conspiracy involving his co-defendants. Rather, by focusing on the underlying substantive offense, he challenges the government's proof that he was a knowing member of the conspiracy alleged in the indictment.[2] We note that the government's proof linking Carr only to a single transaction, while introducing substantial evidence of a broader conspiracy by his three co-defendants, can present other issues. See, e.g., United States v. Carter, 481 F.3d 601, 610-11 (8th Cir.), cert. denied, 128 S. Ct. 706 (2007). But those issues have not been raised.

In rejecting Carr's motion for judgment of acquittal, the district court noted that the evidence of Carr's knowing participation in the conspiracy "is weak." However,

---

[2]Government counsel errs in arguing that "even slight evidence connecting a defendant to the conspiracy may be sufficient to prove involvement." We unanimously rejected that standard, en banc, in United States v. Lopez, 443 F.3d 1026, 1030 (8th Cir. 2006) ("a defendant may be convicted for even a minor role in a conspiracy, so long as the government proves beyond a reasonable doubt that he or she was a member of the conspiracy").

the court explained, the verdict "did not rest on Carr's mere presence but rather on his presence under [a] particular set of circumstances" the court outlined in detail:

> (1) Carr came to the barber shop on the day a package arrived containing ten kilograms of cocaine sent from California by his brother Manuel, (2) within approximately 35 minutes of Carr's arrival . . . co-defendant McGill arrived to pick up the package, driving Carr's mother's car, (3) after Carr placed the package containing cocaine in the trunk of his mother's car, an officer identified himself as "police" . . . and Carr immediately ran back into the barber shop, (4) Carr was in possession of a loaded 9mm weapon and a small quantity of marijuana, (5) Carr and McGill gave false names to the arresting officers, (6) . . . Carr and McGill had authentic Missouri [ID] cards . . . similar to authentic Missouri and Illinois [ID] cards bearing false names possessed by the other co-defendants, (7) Carr falsely stated on three occasions . . . that he was employed as a barber at the Loose Ends Barber Shop, as did his brother . . . when applying for a lease in 1997, and (8) Carr traveled from Missouri to California shortly after his arrest . . . following an argument with his brother Manuel over money.

After careful review of the trial record, we agree with the district court that this evidence was sufficient to permit a reasonable jury to find Carr guilty of the charged offense beyond a reasonable doubt. See Van, 543 F.3d at 964 (standard of review). Carr's action in carrying a ten-kilogram package of cocaine from the barber shop where his brother sent it to the trunk of his mother's car, combined with an array of surrounding circumstantial evidence, raised a far stronger inference of knowing participation than the government presented in the "mere presence" cases on which Carr relies. Carr's arrival at the shop shortly after the package was delivered suggests he was there to help pick it up; the jury was entitled to doubt he was there only because his son needed a haircut. As we have noted, fleeing when Witt yelled "police," giving the police a fictitious name when arrested, and carrying a false ID card similar to those used by the other conspirators support the inference of knowing participation. Cf. United States v. Butler, 238 F.3d 1001, 1004 (8th Cir. 2001). And

carrying a loaded firearm during this incident raises an inference of drug trafficking because "a firearm is a 'tool of the trade' for drug dealers." <u>United States v. Regans</u>, 125 F.3d 685, 686 (8th Cir. 1997), <u>cert. denied</u>, 523 U.S. 1065 (1998).

"Weighing the sufficiency of the evidence is a fact-intensive task. Prior cases are instructive but are seldom if ever controlling." <u>United States v. Marquez</u>, 462 F.3d 826, 829 (8th Cir. 2006). Here, while the government's proof was not as compelling as in many drug conspiracy cases, we conclude it was sufficient for the jury to convict Charles Carr of conspiring to possess cocaine with intent to distribute.

The judgment of the district court is affirmed.

_____