# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3320

_____

United States of America,        *
        *
    Plaintiff - Appellee,     *
        *  Appeal from the United States
v.                 *  District Court for the
        *  District of South Dakota.
Matthew David Stymiest,    *
        *
    Defendant - Appellant.   *

_____

Submitted:  June 11, 2009
Filed:  September 22, 2009

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and GRUENDER, Circuit Judges.

_____

LOKEN, Chief Judge.

Matthew David Stymiest was indicted for assault resulting in serious bodily injury in Indian country in violation of 18 U.S.C. §§ 113(a)(6) and 1153. Stymiest moved to dismiss the indictment for lack of jurisdiction, alleging he is not an Indian. The district court[1] denied the motion, concluding that Indian status is an element of the offense, not a jurisdictional prerequisite. At trial, Stymiest's defenses were that he is not an Indian and that he acted in self-defense. The jury found him guilty. The district court sentenced him to 110 months in prison. Stymiest appeals his conviction

---

[1]The HONORABLE CHARLES B. KORNMANN, United States District Judge for the District of South Dakota.

and sentence, raising three issues relating to Indian status, constructive amendment of the indictment, abuse of discretion in admitting prejudicial evidence, and error in sentencing him as a career offender. We affirm.

## I. Background

A group of people gathered to party at the trailer home of Waylon Black Lance on the Rosebud Sioux Indian Reservation in South Dakota. The group included Black Lance, his wife Jerilyn Roubideaux and children Jason and Joseph, his sister April, April's boyfriend Emanuel Bordeaux, Jerilyn's sister Marilyn Roubideaux, Marilyn's boyfriend Juan Hernandez, and Stymiest. The adults consumed alcohol. Juan and Marilyn -- who was pregnant -- began arguing. Juan choked Marilyn, hit her in the abdomen, and soon left. Stymiest followed him out five minutes later, returned after another five minutes, grabbed a knife from the kitchen, asked Jason and April if "there was a bigger knife," and again left the trailer. He returned about fifteen minutes later with the knife, still clean, and told Jason, "I just fucked up Juan." Black Lance found Hernandez about two hundred yards from the trailer, "gasping for air, and choking on his blood" from significant head and rib injuries that caused traumatic brain injury, respiratory failure, and fluid overload. Rosebud tribal police arrested Stymiest and surrendered him to federal authorities when he identified himself as an Indian.

## II. Indian Status Issues

The Indian Major Crimes Act conferred federal jurisdiction to prosecute enumerated offenses that are committed by an Indian "within the Indian country." 18 U.S.C. § 1153(a). The statute does not define Indian, but the generally accepted test -- adapted from United States v. Rogers, 45 U.S. 567, 572-73 (1846) -- asks whether the defendant (1) has some Indian blood, and (2) is recognized as an Indian by a tribe or the federal government or both. See United States v. Lawrence, 51 F.3d 150, 152 (8th Cir. 1995); United States v. Prentiss, 273 F.3d 1277, 1280 (10th Cir. 2001), noting four circuits and state courts that apply this test. The parties agree that the first Rogers

criterion is satisfied because Stymiest has three thirty-seconds Indian blood. Stymiest argues the district court made three errors in resolving the second criterion -- recognition by a tribe or the federal government -- failing to dismiss the indictment for lack of jurisdiction, erroneously instructing the jury regarding Indian status, and failing to grant judgment of acquittal because of insufficient evidence.

**A. The Motion To Dismiss.** Stymiest first argues that the district court erred in refusing to dismiss the indictment because § 1153 "is a jurisdictional statute." It is true that Stymiest's Indian status was the basis of federal criminal jurisdiction (because the victim was a non-Indian, unless Stymiest was an Indian, this major crime could only have been prosecuted in state court). For this reason, we treated Indian status as a jurisdictional issue in cases such as <u>Lawrence</u>, 51 F.3d at 154. But recent Supreme Court decisions including <u>United States v. Cotton</u>, 535 U.S. 625 (2002), have clarified that this type of issue, while essential to federal subject matter jurisdiction, is an element of the crime that must be submitted to and decided by the jury. Based on these decisions, we revisited the issue and held that a dispute over the defendant's Indian status does not affect the district court's jurisdiction over a prosecution under § 1153. <u>United States v. Pemberton</u>, 405 F.3d 656, 659 (8th Cir. 2005); <u>see</u> <u>United States v. White Horse</u>, 316 F.3d 769, 772 (8th Cir.) (same with a § 1152 prosecution), <u>cert. denied</u>, 540 U.S. 844 (2003). Thus, the district court properly denied the motion to dismiss and submitted the issue of Indian status to the jury as an element of the § 1153(a) offense.

**B. The  Indian Status Jury Instruction.** Stymiest next argues that, if Indian status is an element of the offense, the district court's jury instruction was an inaccurate and inadequate statement of the recognition part of the <u>Rogers</u> test. We review a challenge to jury instructions for abuse of discretion, focusing on whether "the instructions as a whole accurately and adequately state the relevant law." <u>United States v. Wipf</u>, 397 F.3d 632, 635 (8th Cir. 2005) (quotation omitted).

-3-

Relying on the instruction quoted in <u>United States v. Torres</u>, 733 F.2d 449, 456 (7th Cir.), <u>cert. denied</u>, 469 U.S. 864 (1984), the district court instructed the jury:

> The second element is whether Matthew Stymiest is recognized as an Indian by the tribe or by the federal government or both. Among the factors that you may consider are:
>
> 1. enrollment in a tribe;
> 2. government recognition formally or informally through providing the defendant assistance reserved only to Indians;
> 3. tribal recognition formally or informally through subjecting the defendant to tribal court jurisdiction;
> 4. enjoying benefits of tribal affiliation; and
> 5. social recognition as an Indian through living on a reservation and participating in Indian social life, including whether the defendant holds himself out as an Indian.
>
> It is not necessary that all of these factors be present. Rather, the jury is to consider all of the evidence in determining whether the government has proved beyond a reasonable doubt that the defendant is an Indian.

The court overruled Stymiest's objections that the instruction failed to instruct the jury to consider the factors in declining order of importance, giving most weight to tribal enrollment, and added two irrelevant factors, tribal recognition by tribal court jurisdiction and Stymiest holding himself out as an Indian.

In granting post-conviction relief on this issue in <u>St. Cloud v. United States</u>, 702 F. Supp. 1456, 1461 (D.S.D. 1988), the court "gleaned from case law" factors to guide the analysis of the second <u>Rogers</u> criterion and listed the factors "in declining order of importance": "1) enrollment in a tribe; 2) government recognition formally and informally through providing the person assistance reserved only to Indians; 3) enjoying benefits of tribal affiliation; and 4) social recognition as an Indian through living on a reservation and participating in Indian social life." In <u>United States v.

-4-

Driver, 755 F. Supp. 885, 888 & n.7 (D.S.D.), aff'd, 945 F.2d 1410 (8th Cir. 1991), cert. denied, 502 U.S. 1109 (1992), the court noted that tribal enrollment is the most important St. Cloud factor,[2] but it is not essential and its absence is not determinative. In affirming dismissal of the indictment in Lawrence, we considered the St. Cloud factors in declining order of importance only because the government did not object. 51 F.3d at 152. In Pemberton, 405 F.3d at 660, where the jury instruction was not an issue, we held the evidence sufficient to establish the defendant's Indian status without applying the Rogers test or even citing St. Cloud.

A review of these authorities persuades us there is no single correct way to instruct a jury on this issue. In Torres, while the Seventh Circuit quoted the entire instruction, it affirmed because the jury was instructed that "a person must have some degree of Indian blood and must be recognized as an Indian by the Indian tribe and/or the Federal government." 733 F.2d at 456. That is the two-part Rogers test, and we agree it provides the essential elements of a proper instruction. Beyond that, the St. Cloud factors may prove useful, depending upon the evidence, but they should not be considered exhaustive. Nor should they be tied to an order of importance, unless the defendant is an enrolled tribal member, in which case that factor becomes dispositive. Here, the district court properly identified two other factors relevant on the facts of this case -- that the tribe exercised criminal jurisdiction over Stymiest, see United States v. Bruce, 394 F.3d 1215, 1226-27 (9th Cir. 2005), and that Stymiest held himself out to be an Indian, see United States v. Dodge, 538 F.2d 770, 787 (8th Cir. 1976), cert. denied, 429 U.S. 1099 (1977). The court did not abuse its discretion in overruling Stymiest's objections to the instruction given.

We have some concern that the instruction given would permit a jury to find Indian status without finding, as the second part of the Rogers test requires, that the

---

[2]Indeed, some Indian blood and tribal enrollment are sufficient to establish Indian status. See, e.g., United States v. Antelope, 430 U.S. 641, 646 n.7 (1977).

defendant be recognized as an Indian *by the tribe or by the federal government*. Holding oneself out as an Indian by submitting to tribal court jurisdiction or seeking care at a tribal hospital or participating in tribal community activities is relevant to being recognized by the tribe, but it is not otherwise sufficient to satisfy the political underpinnings of the Rogers test.  Compare United States v. Cruz, 554 F.3d 840, 848 (9th Cir. 2009) (minimal participation in Indian social life alone may be insufficient). However, this objection was not raised, and thus we have no difficulty concluding that the instruction as a whole was not an abuse of the district court's discretion.

**C. Sufficiency of the Evidence.**  Finally, Stymiest argues that the prosecution adduced insufficient evidence to support the jury's finding that he is an Indian for purposes of § 1153(a).  We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government, resolving evidentiary conflicts in the government's favor, and drawing all reasonable inferences in favor of the jury's verdict.  See United States v. Sturdivant, 513 F.3d 795, 800 (8th Cir. 2008) (standard of review).

Stymiest is not enrolled in any tribe.  But two Rosebud tribal officers testified that Stymiest identified himself on the night of the incident as an enrolled member of the Leech Lake Band of Ojibwe in Minnesota.  When Stymiest was told the officers could not locate his enrollment, he suggested they look under "Greene."  Leech Lake Band officials responded that Stymiest was not enrolled under either name.  Harry Greene, Stymiest's biological grandfather, is an enrolled member of the Leech Lake Band.  Debra Eason, Greene's daughter and Stymiest's mother, testified that she and her son are ineligible for enrollment in the Band because they lack the required one-quarter Indian blood.  Stymiest's white adoptive parents testified they tried to register Stymiest with "the appropriate tribe" so he could receive educational benefits but were unsuccessful because he lacked the necessary quantum of Indian blood.

Llewellyn Wright, records custodian at the Rosebud Indian Health Services (IHS) hospital, testified that Stymiest's records show that he made approximately ten "emergency-type visits" to the hospital for head trauma, seizures, and asthma attacks. Wright testified that IHS doctors must stabilize any patient in an emergency situation, regardless of Indian status, but that non-Indians are discharged or transferred once stabilized. Georgia Kills in Water, patient registration supervisor, testified that the records show the IHS facility treated Stymiest six times, five times in the emergency room and one follow-up visit to the outpatient clinic. At the clinic, Stymiest identified himself as an enrolled member of the Leech Lake Band, making him eligible for treatment as an Indian. However, he did not respond to IHS's subsequent request for enrollment documents. Therefore, he was not eligible for free non-emergency services, but the hospital never billed him for the out-patient visit.

The Rosebud tribal police chief testified that his officers have jurisdiction only over Indians. They ask an arrestee his status and turn him over to state or local authorities if he is not an Indian. When interviewed concerning this assault, Stymiest identified himself as an Indian, and police department records show he spent time in the Rosebud jail on three occasions. Jamie Ayers, a Rosebud tribal prosecutor, testified that her office prosecuted Stymiest three times in tribal court for tribal offenses. Each time, Stymiest pleaded no contest, did not appeal, and received a suspended sentence or spent time in the tribal jail. Ayers explained that the tribal code prohibits her office from prosecuting non-Indians, but it is possible for a non-Indian to be prosecuted and convicted in tribal court if he does not object. Although the Rosebud Tribe has no jurisdiction to punish anyone but an Indian, see Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 211-12 (1978), its "powers of self-government" included the power to prosecute non-member Indians such as Stymiest, if he was a Leech Lake Band Indian. See 25 U.S.C. § 1301(2).

The government also presented substantial evidence of Stymiest's social recognition and repeated self-identification as an Indian. Stymiest lived and worked

on the Rosebud reservation during the year prior to the assault. Waylon Black Lance testified that he and Stymiest socialized and Stymiest said he was an Indian. Jerilyn Roubideaux testified that her sister Janelle was Stymiest's girlfriend; Jerilyn saw Stymiest "almost . . . every day" during the year he lived on the reservation. Jerilyn's other sister, Marilyn, who was Hernandez's girlfriend, also testified that Stymiest said he was an Indian. Greene testified that he "share[d] his heritage" with Stymiest and that Stymiest lived with him for about six months in 2003 at his home in Minnesota.

Applying the two-part Rogers test, and viewing this evidence in the light most favorable to the jury's verdict, we conclude that sufficient evidence supports the jury's finding that Stymiest was an Indian for purposes of this § 1153(a) offense. Without question, he has the requisite Indian blood -- his grandfather is an enrolled member and medicine man in a Minnesota Band. By repeatedly submitting to tribal arrests and prosecutions, and by reporting to the IHS clinic he is an Indian, Stymiest held himself out as an Indian and received forms of official tribal recognition. See Lawrence, 51 F.3d at 152 n.4; Cruz, 554 F.3d at 850; Bruce, 394 F.3d at 1226-27. He also lived and worked on the Rosebud reservation and repeatedly held himself out as a non-member Indian to his Indian girlfriend and in socializing with other Indians. Although not an enrolled member of any tribe, enrollment "is not the only means [of establishing Indian status] nor is it necessarily determinative." Pemberton, 405 F.3d at 660; see Antelope, 430 U.S. at 646 n.7.

### III. The Constructive Amendment Issue

The indictment charged that Stymiest "did unlawfully assault Juan Hernandez, and said assault resulted in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6)." The district court instructed the jury that, to convict, it had to find "the defendant voluntarily and intentionally assaulted Juan Hernandez." Stymiest argues this instruction constructively amended the indictment by using "voluntarily and intentionally" instead of "unlawfully." He preserved this issue for appeal with a

timely objection that the district court overruled. An instruction constructively amends the indictment if it allows the jury to convict the defendant of a different offense than the offense charged. See United States v. Brown, 330 F.3d 1073, 1077 (8th Cir.), cert. denied, 540 U.S. 975 (2003).

The elements of the 18 U.S.C. § 113(a)(6) offense of assault resulting in serious bodily injury are (1) an intentional assault that (2) results in serious bodily injury, committed (3) by an Indian and (4) within Indian Country. United States v. Davis, 237 F.3d 942, 944-45 (8th Cir. 2001). An assault is not unlawful if it is justified by self-defense, a defense Stymiest asserted, which required the government to prove beyond a reasonable doubt he did *not* act in self-defense. See United States v. Milk, 447 F.3d 593, 598 (8th Cir. 2006); United States v. Two Eagle, 318 F.3d 785, 790-91 (8th Cir. 2003). The court gave a separate instruction on the issue of self-defense. The instruction's "voluntarily and intentionally" language addressed the first element of the charged offense, and the separate self-defense instruction addressed the allegation of an "unlawful" assault. Thus, the instructions as a whole did not constructively amend the indictment by permitting the jury to convict Stymiest of an uncharged offense.

## IV. An Evidentiary Issue

Stymiest argues the district court abused its discretion by allowing Jason Black Lance to testify that Stymiest took a knife from the kitchen of the trailer home and left in pursuit of Hernandez. This contention is without merit. The testimony was relevant to give the jury a complete picture of what happened on the night in question. See United States v. LaDue, 561 F.3d 855, 857 (8th Cir. 2009). It was particularly relevant because Stymiest returning for a knife and requesting a bigger knife tends to evidence an intent to assault and casts doubt on the defense of self-defense, even if Stymiest never used the knife. See United States v. Carr, 560 F.3d 849, 851 (8th Cir. 2009). Even if the testimony was therefore prejudicial to Stymiest, it was not *unfairly*

prejudicial within the meaning of Rule 403 of the Federal Rules of Evidence. The government never suggested that Stymiest cut Hernandez with the knife, and Jason testified that the knife "looked unused" when Stymiest returned with it. The district court did not abuse its substantial discretion in admitting this testimony.

## V. The Career Offender Issue

Finally, Stymiest argues the district court improperly enhanced his sentence by applying the career offender provision of the advisory guidelines, U.S.S.G. § 4B1.1(a), because his prior South Dakota felony conviction for third-degree burglary is not a crime of violence under § 4B1.2(a)(2)[3] as construed in cases that apply the Supreme Court's recent decision in Begay v. United States, 128 S. Ct. 1581 (2008). Reviewing this issue *de novo*, we conclude that it is controlled by our decision in United States v. Bell, 445 F.3d 1086 (8th Cir. 2006), a case inexplicably not cited by government counsel.

The Armed Career Criminal Act imposed a mandatory minimum fifteen-year sentence if a defendant convicted of violating 18 U.S.C. § 922(g) has three prior "violent felony" or serious drug offense convictions. 18 U.S.C. § 924(e)(1). The definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B)(ii) is identical to the definition of "crime of violence" in U.S.S.G. § 4B1.2(a)(2) *except* the enumerated offenses under the ACCA include "burglary," but only "burglary of a dwelling" is an enumerated offense under § 4B1.2(a)(2). In Taylor v. United States, 495 U.S. 575, 598-99 (1990), decided a few months after adoption of the current version of § 4B1.2(a)(2), the Supreme Court held that an offense constitutes "burglary" under

---

[3]As relevant here, § 4B1.2(a)(2) defines "crime of violence" as including "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . (2) is burglary of a dwelling . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another."

the ACCA if it contains the elements of "generic burglary," which the Court defined as "unlawful or unprivileged entry into, or remaining in, *a building or structure*, with intent to commit a crime." (Emphasis added.) In <u>Bell</u>, 445 F.3d at 1090, we thoroughly reviewed the history of these provisions and concluded:

> Though they used different operative terms, crime of violence and violent felony, in this context the two terms should have the same meaning, both as a matter of statutory construction and to avoid sentencing disparity.

*   *   *   *   *

> Based upon [<u>United States v. LaBonte</u>, 520 U.S. 751 (1997)], were it necessary to the decision in this case, we would invalidate the term "of a dwelling" in U.S.S.G. § 4B1.2(a)(2) as inconsistent with the Supreme Court's subsequent interpretation of the governing statute in <u>Taylor</u>. But it is not necessary to do so because the "otherwise involves" provision in § 4B1.2(a)(2) as construed in [our prior cases] produces the same result. It is a correct result.

Stymiest's third-degree burglary of an unoccupied structure was a generic burglary under <u>Taylor</u>, 495 U.S. at 597 ("Congress presumably realized that the word 'burglary' is commonly understood to include . . . burglaries involving . . . an unoccupied building"). At the time, S.D. Codified Laws § 22-32-8 provided:

> Any person who enters an unoccupied structure, with intent to commit any crime other than the act of shoplifting or retail theft . . . or remains in an unoccupied structure after forming the intent to commit any crime other than shoplifting . . . is guilty of third degree burglary.

The statute is potentially over-inclusive because it defines "structure" to include motor vehicles, watercraft, aircraft, railroad cars, trailers, and tents. <u>See</u> <u>Taylor</u>, 495 U.S. at 591, 599, 602. However, Stymiest's pre-sentence investigation report, to which he did

-11-

not object, stated that he burgled the "West River Research Building." When a defendant fails to object to fact recitations in the PSR establishing that a prior offense was generic burglary, "the government need not introduce at sentencing the documentary evidence that <u>Taylor</u> and <u>Shepard [v. United States</u>, 544 U.S. 13, 26 (2005),] otherwise require." <u>United States v. Reliford</u>, 471 F.3d 913, 916 (8th Cir. 2006), <u>cert. denied</u>, 550 U.S. 938 (2007); <u>see Bell</u>, 445 F.3d at 1090-91. Here, Stymiest's general objection to the PSR classifying him as a career offender was not sufficient to trigger the government's obligation to introduce court documents confirming the PSR's fact statement that he burgled a building.

As noted in <u>Bell</u>, we have repeatedly held that any generic burglary is a crime of violence under the "otherwise involves" residual provision in U.S.S.G. § 4B1.2(a)(2). <u>See, e.g.</u>, <u>United States v. LeGrand</u>, 468 F.3d 1077, 1081-82 (8th Cir. 2006), <u>cert. denied</u>, 551 U.S. 1109 (2007); <u>United States v. Olthoff</u>, 437 F.3d 729, 732 (8th Cir. 2006) (burglary of unoccupied ski resort office a crime of violence). This conclusion is supported by the Supreme Court's decision in <u>James v. United States</u>, 550 U.S. 192, 203-05 (2007), which held that the ACCA's otherwise involves provision encompasses *attempted* burglary because an attempted burglary poses the same kind of risk of "face-to-face confrontation between the burglar and a third party" as a completed burglary. Likewise, burglary of an unoccupied or commercial structure, while not posing a risk of harm to the occupants of a "dwelling," poses the same kind of risk of violent confrontation with a police officer, night watchman, store security guard, or innocent passer-by as other types of generic burglary.

In <u>Begay</u>, the Court considered whether felony DWI is a violent felony under the ACCA's "otherwise involves" residual provision. The Court limited those offenses to crimes "that are roughly similar, in kind as well as in degree of risk posed," to the enumerated crimes in that they "typically involve purposeful, 'violent,' and 'aggressive' conduct." 128 S. Ct. at 1585-86. That additional limitation has prompted reconsideration of many offenses previously deemed violent felonies or

-12-

crimes of violence solely because they "involve conduct that necessarily presents a serious potential risk of physical injury to another," such as the broad array of escape offenses considered in Chambers v. United States, 129 S. Ct. 687 (2009), and in United States v. Hudson, No. 08-3240, 2009 WL 2525581 (8th Cir. Aug. 20, 2009), and the automobile theft and tampering offenses at issue in United States v. Williams, 537 F.3d 969 (8th Cir. 2008).

Begay did not question the decision in James and thus does not undermine our burglary precedents. Stymiest's third degree burglary offense was not only, in the words of Begay, "roughly similar, in kind" to generic burglary, it was generic burglary as defined in Taylor and therefore should be an enumerated offense under § 4B1.2(a)(2) but for the Commission's arbitrary "of a dwelling" limitation. Even if that limitation compels analysis under the "otherwise involves" residual provision, nothing in Begay or Chambers suggests that an offense this similar to an enumerated offense, which presents the same kind of risk of violent confrontation recognized in James, would be classified differently than the attempted burglary at issue in James.

For these reasons, we conclude that our prior decisions classifying generic burglaries of structures other than "dwellings" as crimes of violence under the "otherwise involves" provision of § 4B1.2(a)(2) were not implicitly overruled by Begay. Accord United States v. Cantrell, 530 F.3d 684, 695-96 (8th Cir. 2008); United States v. Woodard, 321 F. App'x 543 (8th Cir. 2009) (unpublished per curiam); United States v. McFarlin, 306 F. App'x 342 (8th Cir. 2009) (unpublished per curiam). Contra United States v. Giggey, 551 F.3d 27 (1st Cir. 2008) (en banc). Alternatively, if Begay requires a different result under the "otherwise involves" provision, we hold -- as forecast in Bell -- that Stymiest was convicted of an enumerated burglary offense because the "of a dwelling" limitation in § 4B1.2(a)(2) was invalidated by the Supreme Court's decision in Taylor. Under either of these

alternative holdings, the district court correctly ruled that Stymiest's third-degree burglary conviction was a crime of violence and sentenced him as a career offender.

The judgment of the district court is affirmed.

_____