# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-4012

———————

United States of America,     *
                                     *

    Plaintiff - Appellee,     *

                                     * Appeal from the United States

    v.                           * District Court for the Northern

                                     * District of Iowa.

Jeffery Eugene Haas,     *

                                     *

    Defendant - Appellant.     *

———————

Submitted: November 20, 2009
Filed: October 15, 2010

———————

Before WOLLMAN, JOHN R. GIBSON, and SHEPHERD, Circuit Judges.

———————

JOHN R. GIBSON, Circuit Judge.

Jeffery Haas appeals his conviction following a jury trial on one count of aiding and abetting burglary of a building used in part as a bank in violation of 18 U.S.C. § 2113(a). He argues that he was improperly convicted of aiding and abetting bank burglary because the Go America Convenience Store ("Store") is not a bank, and neither the Store nor the Automated Teller Machine ("ATM") located in the Store was insured by the Federal Deposit Insurance Corporation ("FDIC"). He also argues that he is entitled to a new trial, as the district court[1] committed instructional and

———————

[1]The Honorable Linda R. Reade, Chief Judge, United States District Judge for the Northern District of Iowa.

evidentiary errors. In addition, he asserts that he is not a career offender for sentencing purposes, and that the alternative sentence on bank theft is unreasonable and based on an improper upward departure. He finally argues that the district court erred in refusing to appoint counsel for him before sentencing. We affirm.

I.

On June 12, 2007, a grand jury returned a second superseding indictment charging Haas with two counts: (1) aiding and abetting the burglary of a building used in part as a bank in violation of 18 U.S.C. § 2113(a) (Count 1), and (2) theft of bank funds in violation of 18 U.S.C. § 2113(b) (Count 2). Haas filed a motion to dismiss the burglary count, which was denied. On July 16, 2007, Haas proceeded to trial.

On December 8, 2002, Haas and three other individuals entered the Store in Coggon, Iowa, and stole an ATM, which was located in the Store. The ATM was owned by the Linn County State Bank ("Bank"). A forensic examination of the crime scene developed significant evidence. Haas stipulated that his DNA was found in blood samples on the ATM and on the back door of the Store. He conceded at trial that he was guilty of Count 2, the theft charge. However, his attorney argued to the jury that Haas was not guilty of Count 1 because placing an ATM at a convenience store does not make it a bank.

At trial, Bank Vice President Susan Dolan testified that at the time of the theft, the deposits of the Bank were FDIC-insured. She testified that the ATM bore a face plate that identified it as the Bank's property. Dolan testified that the ATM provided many bank services to the Bank's customers, allowing them to withdraw cash, check their balances, transfer funds, and obtain cash advances. Haas established that the ATM could not accept deposits, open accounts, generate a statement of account beyond the current balance, generate a copy of a check, or process a loan. The ATM was available to customers from 6 a.m. until 10 p.m., seven days per week.

At the conclusion of the evidence, Haas made a motion for judgment of acquittal, which was denied. Haas objected to the jury instruction on Count 1. The jury convicted Haas on both counts of the second superseding indictment. Haas then renewed his motion for judgment of acquittal, which the district court denied. He subsequently filed motions for arrest of judgment, acquittal, and new trial; these post-trial motions were also denied.

On November 26, 2008, the district court determined that Haas could be sentenced on only one count of the indictment because the two counts were multiplicitous. The district court also determined that Haas was a career offender. At a hearing on December 18, 2008, the court sentenced Haas on Count 1 of the indictment and ordered Count 2 dismissed upon final affirmance of Count 1. Haas was sentenced as a career offender to 210 months' imprisonment[2] and appeals.

II.

A.

Haas argues that the government improperly charged him with aiding and abetting the burglary of a bank because his conduct did not fall within section 2113(a). Specifically, Haas contends that neither the Store nor the ATM is a bank under federal law. Relying on United States v. Blajos, 292 F.3d 1068 (9th Cir. 2002), Haas contends that the Store could not be used "in part" as a bank because "the Government ha[s] to prove that *the store* was used 'in part,' . . . as a 'bank' within the meaning of the bank robbery statute, that is, that *the store's* ATM 'deposits' were FDIC-insured."

_____

[2]The district court imposed an alternative sentence in the event "the Court has erred and the Court should be sentencing for some reason on Count 2 as opposed to Count 1." Haas argues that this alternative sentence of 120 months is unreasonable and based on an improper upward departure. Because we affirm Haas's conviction and sentence on Count 1, we need not reach the alternative sentence on Count 2.

292 F.3d at 1072 (citing United States v. Rrapi, 175 F.3d 742 (9th Cir. 1999)). Haas goes on to argue that because it is undisputed that the ATM at the Store did not accept deposits, neither was used in part as a bank.

The government responds that section 2113(a) requires only that Haas enter "any building used in whole or in part as a bank" with the intent to commit a felony therein affecting the bank, and that a store containing a bank ATM is a building used in part as a bank. The government relies on opinions from the Second and Ninth Circuits, United States v. Rood, 281 F.3d 353 (2d Cir. 2002), and Rrapi, 175 F.3d 742. Our review requires statutory interpretation, an issue of law that we consider de novo. United States v. May, 535 F.3d 912, 915 (8th Cir. 2008).

The government charged Haas with a violation of section 2113(a), which states in relevant part that:

> Whoever enters or attempts to enter any bank, . . . or any building used in whole or in part as a bank, . . . with intent to commit in such bank, . . . or building, or part thereof, so used, any felony affecting such bank, . . . and in violation of any statute of the United States, or any larceny--
>
> Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a). "Bank" is defined in part as: "any institution the deposits of which are insured by the Federal Deposit Insurance Corporation." 18 U.S.C. § 2113(f).

We are persuaded by the Rood and Rrapi decisions, both of which determined that the unambiguous language of section 2113(a) applied to a defendant who takes federally insured deposits from a bank-owned and operated ATM located within a

store. <u>Rood</u>, 175 F.3d at 355; <u>Rrapi</u>, 175 F.3d at 751-52.[3] Both the Second and Ninth Circuits rejected the argument that neither an ATM nor a store is a bank. <u>Rood</u>, 281 F.3d at 356; <u>Rrapi</u>, 175 F.3d at 752. We are also persuaded by the district court's reasoning that "<u>Blajos</u> does not stand for the proposition that the government can *only* meet its burden by showing that the ATM or its funds are insured by the FDIC." The correct inquiry is whether the deposits of the Bank were FDIC-insured.

There is no question that the Bank funds housed within the ATM were federally insured. Here, Bank Vice-President Dolan testified that at the time of the theft, the deposits of the Bank were FDIC-insured. It is undisputed that the Bank owned the ATM located in the Store. Although the ATM did not offer every service that the Bank provided, it made many banking services available to the Bank customers. We conclude, therefore, that the building housing this ATM was used in part as a bank.

## B.

Haas recasts the issue of whether the Store was used in part as a bank by contending that the district court erred in instructing the jury. We review a district court's jury instructions for abuse of discretion. <u>United States v. Floyd</u>, 458 F.3d 844, 847 (8th Cir. 2006). We review instructions and affirm if, taken as a whole, they fairly and adequately instruct the jurors on the applicable law. <u>United States v. Kent</u>, 531 F.3d 642, 653 (8th Cir. 2008).

---

[3]As a side matter, Haas argues that section 2113 is ambiguous and should be interpreted in his favor because 18 U.S.C. § 2113(a) was enacted "in the 1930's amid a concern over interstate operations by gangsters against banks – activities with which local authorities were frequently unable to cope" and that ATMs did not exist at the time. But "[l]enity . . . serves only as an aid for resolving an ambiguity; it is not to be used to beget one." <u>Albernaz v. United States</u>, 450 U.S. 333, 342 (1981). Here, the plain language of the statute unambiguously applies when a building containing a bank-owned ATM is used in part as a bank. <u>See</u> <u>Rood</u>, 281 F.3d at 355; <u>Rrapi</u>, 175 F.3d at 752. Accordingly, the rule of lenity does not apply.

Haas argues that the jury should have been instructed:

> An institution's status as a federally insured depository institution encompasses its home office as well as each domestic branch office established by the institution. A "domestic branch" does not include an automated teller machine . . . .

Whether an ATM is a "domestic branch" of an FDIC-insured institution was not at issue. Rather, the properly framed issue is whether the Store was a building used in part as a bank. The jury was instructed that a "'building used in part as a bank' includes any building where a bank performs banking functions by any means, including by means of a bank-operated Automated Teller Machine." This definition incorporates the conclusions of law from Rood and Rrapi. Because the court's instructions fairly and adequately instructed the jurors on the applicable law, the district court did not abuse its discretion. See United States v. Gustafson, 528 F.3d 587, 593 (8th Cir. 2008) (district court did not abuse its discretion by failing to give instruction that would have misled the jury on the law).

## C.

As a subsidiary matter, Haas argues that the district court erroneously excluded evidence that the ATM and the Store were not FDIC-insured. "We review evidentiary rulings for abuse of discretion. Even when an evidentiary ruling is improper, we will reverse a conviction on this basis only when the ruling affected substantial rights or had more than a slight influence on the verdict." Gustafson, 528 F.3d 587 at 590-91 (citations omitted).

The district court did not abuse its discretion by excluding evidence about the FDIC insurance. The government sought to prove that the Store was used "in part" as a bank and that the FDIC insured the Bank's deposits, which is what is required by 18 U.S.C. § 2113(a) and (f). Haas offered evidence to show that neither the ATM nor

-6-

the Store was FDIC-insured.  This evidence was not probative of a relevant issue, and its admission would have confused the jury.  The district court, therefore, did not abuse its discretion.

## D.

Next, Haas argues that the district court did not correctly analyze the crime of violence[4] issue pursuant to U.S.S.G. § 4B1.2(a)(2)[5] under Begay v. United States, 553 U.S. 137 (2008). We review this issue de novo.  United States v. Stymiest, 581 F.3d 759, 767 (8th Cir. 2009), cert. denied, 130 S. Ct. 2364 (2010).[6]

Haas argues that his previous Iowa convictions for burglary of a motor home and burglary of a locked garage are not crimes of violence.  Haas's argument is unavailing.  First, "burglary of a dwelling" is a crime of violence within the meaning of section 4B1.2.  We have stated that a "dwelling" includes "a mobile home . . . or

---

[4]This case involves the term "crime of violence," which is viewed as interchangeable with the statutory definition of "violent felony" under the Armed Career Criminal Act.  See United States v. Johnson, 417 F.3d 990, 997 (8th Cir. 2005).

[5]As relevant here, section 4B1.2(a)(2) defines "crime of violence" as including "any offense under federal or state law, punishable by imprisonment for a term exceeding one year that . . . (2) is burglary of a dwelling . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another."

[6]On appeal, Haas initially argued that he is not a career offender because the conviction on Count 1 is for burglary of a commercial building, as opposed to burglary of a dwelling, and that after Begay, burglary of a commercial building is not a crime of violence.  This argument is foreclosed by our decision in Stymiest; there, we held that Begay does not undermine our previous decisions holding that generic burglary, including burglary of a commercial building, is a crime of violence. Stymiest, 581 F.3d at 768-69.  To his credit, defense counsel acknowledged at oral argument that Stymiest disposes of the commercial burglary issue.

other enclosed space which is used or intended for use as a human habitation, home or residence." United States v. Graham, 982 F.2d 315, 316 (8th Cir. 1992) (per curiam) (internal quotation omitted). We are thus persuaded by the district court's reasoning that Haas's conviction for burglary of a motor home was a crime of violence.

The district court also stated that Haas's conviction of burglary of a locked garage is a crime of violence. But Haas argues that no determination can be made from the permissible source documents that the underlying conviction was a garage. Nonetheless, Haas acknowledges that the court may look to the charging instrument as a permissible source. See Shepard v. United States, 544 U.S. 13, 26 (2005). Here, the pre-sentence report states that the complaint is the source of the information. Moreover, in his objection letter to the pre-sentence report, Haas conceded that, under governing Circuit precedent, burglary of a garage is a qualifying predicate offense. See, e.g., United States v. Mathijssen, 406 F.3d 496, 499 (8th Cir. 2005) (burglary of a detached garage is a crime of violence). Accordingly, we are persuaded by the district court's reasoning that Haas's earlier burglary conviction was a crime of violence and, consequently, Haas is a career offender.

E.

Finally, Haas argues that the district court erred in its refusal to appoint Haas's counsel under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, to represent him at sentencing. Following his conviction at trial, Haas filed a motion to have the counsel he had retained be appointed for the purposes of sentencing because he could no longer afford to pay legal fees. He notes that he was detained following the jury's verdict and, therefore, "he is no longer employed and has no income."

We review the district court's determination of financial eligibility for court-appointed counsel under a three-step process:

We must ask, (1) whether the district court conducted an "appropriate inquiry" into the defendant's financial eligibility, (2) whether the district court correctly determined the defendant's financial eligibility, and (3) whether the district court erred when it weighed the "interests of justice."

United States v. Fincher, 538 F.3d 868, 876 (8th Cir. 2008) (citations omitted). Because the first two inquiries are met by the district court's conclusion that Haas is financially eligible for court-appointed counsel on appeal, we consider only the third inquiry.

Haas argues that the district court erred in weighing the "interests of justice." The CJA itself provides, "[i]f at any stage of the proceedings, . . . the court finds that the person is financially unable to pay counsel whom he had retained, it may appoint counsel . . . and authorize payment . . . as the interests of justice may dictate." 18 U.S.C. § 3006A(c). The CJA therefore acknowledges that circumstances may call for the appointment of counsel despite initial representation by retained counsel. But the "purpose of the statute is to protect indigent defendants and not to provide compensation in whole or in part for appointed counsel." Tyler v. Lark, 472 F.2d 1077, 1080 (8th Cir. 1973).

Here, the court explained that it denied defendant's request to appoint retained counsel because "[g]enerally, an attorney will not be permitted to withdraw or convert to court-appointed status due to defendant's failure to comply with the financial agreement," and defendant's incarceration and failure to comply "could have been anticipated when counsel agreed to represent Defendant." In other words, an attorney who fails to make adequate arrangements before accepting representation of a client cannot rely on the CJA to "bail [him] out." United States v. James, 301 F. Supp. 107, 141 (W.D. Tex. 1969). Accordingly, the district court did not err in denying Haas's motion for appointment of counsel.

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

_____