**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2020-NMCA-021**

**Filing Date: January 15, 2020**

**No. A-1-CA-36206**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CLOYCEVANN SALAZAR,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Released for Publication May 5, 2020.

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

Law Offices of Adrianne R. Turner
Adrianne R. Turner
Albuquerque, NM

for Appellant

**OPINION**

**IVES, Judge.**

**{1}** This appeal presents a question of first impression in New Mexico: whether a person must be an enrolled member of a tribe or pueblo to qualify as an Indian for purposes of determining criminal jurisdiction. A state generally "does not have

jurisdiction over crimes committed by an Indian in Indian country." *State v. Frank*, 2002-NMSC-026, ¶ 12, 132 N.M. 544, 52 P.3d 404. In his probation revocation proceedings, Defendant Cloycevann Salazar argued that his Indian status was fatal to the State's theory that Defendant's conduct in Indian country—which resulted in new charges being filed against him under a new cause number in New Mexico state court—violated the condition of his probation that required him to comply with New Mexico's criminal statutes. The district court disagreed, concluding that Defendant is not an Indian because he is not an enrolled member of a tribe or pueblo. Defendant then pled no contest pursuant to a conditional plea agreement that included a provision allowing him to appeal the district court's ruling. Because we conclude that enrollment is not necessary for Indian status, we reverse and remand the case to the district court so that it may reconsider its ruling that Defendant is not an Indian based on pertinent factors in addition to Defendant's lack of enrollment.[1]

## BACKGROUND

**{2}** While Defendant was on probation, the State filed a criminal complaint against him, alleging that he had committed two new offenses: battery on a household member in violation of NMSA 1978, Section 30-3-15 (2008) and criminal damage to property in violation of NMSA 1978, Section 30-15-1 (1963). The State then filed a petition to revoke Defendant's probation, alleging that he violated a condition of his probation by "violat[ing] the laws or ordinances of the State of New Mexico, or any jurisdiction and/or endanger[ing] the person or property of another by being charged with [c]riminal [d]amage to [p]roperty of a [h]ousehold [m]ember and [b]attery [a]gainst a [h]ousehold [m]ember." To support its theory, the State attached to its petition a copy of the criminal complaint charging Defendant with these two new offenses. Also attached was a statement of probable cause alleging that the charged offenses occurred on the Mescalero Apache Reservation and that the offense "involv[ed] two non-[t]ribal members."

**{3}** In response to the petition, Defendant argued, among other things,[2] that his probation could not be revoked based on alleged violations of New Mexico's criminal statutes because, as an Indian, he is not subject to prosecution by the State of New Mexico for violating state statutes based on conduct that allegedly occurred on the Mescalero Apache Reservation. Stated differently, according to Defendant, even if the State could prove that he engaged in the conduct alleged in the criminal complaint, the State's petition to revoke was not viable as a matter of law because New Mexico's criminal statutes do not apply to that conduct.

---

1Because of the narrow scope of the district court's task on remand, we decline to address the merits of Defendant's argument that the district court erred during the sentencing phase. Defendant may raise the issue, if necessary, in a subsequent appeal.

2Defendant also argued that the district court should suppress the evidence that law enforcement had gathered regarding the alleged battery and property damage because law enforcement did not have authority to investigate on the Mescalero Apache Reservation. The district court ruled against Defendant, and he reserved the right to appeal that ruling in his plea agreement, but he does not challenge that ruling on appeal.

**{4}** During the hearing on Defendant's motion, the State stipulated that Defendant was a lifelong resident of the Mescalero Apache Reservation and that his father was an enrolled tribal member. Defendant presented the following additional facts by proffer: (1) Defendant is not an enrolled member of the Mescalero Apache Tribe; (2) Defendant is $7/32$ Mescalero Apache by blood, which falls short of the ¼ required to qualify for membership, but he is an "affiliate" of the tribe; (4) Defendant attended school on the reservation; (5) Defendant gets his medical care on the reservation; (6) Defendant has had several criminal cases adjudicated in tribal court. The State did not dispute these facts. The thrust of the State's argument was that Defendant does not have Indian status because he is not an enrolled member of the tribe and that his affiliate status is insufficient to establish such status.

**{5}** The district court agreed with the State. The court concluded that Defendant is not an Indian based on the undisputed fact that he is not an enrolled member of the Mescalero Apache Tribe, explaining that when a person's percentage of Indian blood is even slightly too low to qualify for enrollment, the State has jurisdiction.

**{6}** Defendant then pled no contest pursuant to a conditional plea and disposition agreement. The agreement allowed Defendant to appeal the district court's denial of his pretrial motion. The district court accepted the agreement, concluded that Defendant had violated a condition of his probation by committing new offenses in violation of New Mexico law, revoked Defendant's probation, and sentenced him to twenty-four years of incarceration with credit for five years of time served. Defendant appeals.

## DISCUSSION

**{7}** To determine whether Defendant's alleged violations of New Mexico's criminal statutes while he was in Indian country are a legally viable basis for revoking Defendant's probation, we begin with the "general principle" that "a state does not have jurisdiction over crimes committed [(1)] by an Indian [(2)] in Indian country." *Frank*, 2002-NMSC-026, ¶ 12. In Defendant's case, the second element is undisputed. "Indian country" includes "all land within the limits of any Indian reservation under the jurisdiction of the United States Government," 18 U.S.C. § 1151(a) (2018), and the State has acknowledged that the charged offenses occurred within the Mescalero Apache Reservation.

**{8}** At issue here is the first element: whether Defendant is an "Indian." Although "Indian" is a term of art in the context of criminal jurisdiction, *see* 18 U.S.C. §§ 1152, 1153 (2018), Congress has not defined the term, leaving the task to the courts, which generally apply a test based on *United States v. Rogers*, 45 U.S. 567, 573 (1846). The test's two requirements are "whether the defendant (1) has some Indian blood, and (2) is recognized as an Indian by a tribe or the federal government or both." *United States v. Stymiest*, 581 F.3d 759, 762 (8th Cir. 2009); *accord United States v. Bruce*, 394 F.3d 1215, 1224 (9th Cir. 2005); *United States v. Prentiss*, 273 F.3d 1277, 1280 (10th Cir. 2001); *United States v. Torres*, 733 F.2d 449, 456 (7th Cir. 1984); *see also United States v. Zepeda*, 792 F.3d 1103, 1113 (9th Cir. 2015) (en banc) (clarifying that the

Ninth Circuit test requires "(1) proof of some quantum of Indian blood, whether or not that blood derives from a member of a federally recognized tribe, and (2) proof of membership in, or affiliation with, a federally recognized tribe").

**{9}** In this case, because it is undisputed that Defendant meets the Indian blood requirement, the only dispute pertains to the second requirement: whether Defendant has been recognized as an Indian by either the Mescalero Apache Tribe or the United States or both. *See Bruce*, 394 F.3d at 1224-25 (stating that evidence of federal recognition is not required and emphasizing that the question is whether there is some evidence of federal *or* tribal recognition). The district court concluded that Defendant is not recognized as an Indian because he is not an enrolled member of the Mescalero Apache Tribe. Defendant argues that the district court applied the wrong test, and that the court erred by concluding that his lack of tribal membership automatically disqualifies him from being recognized as an Indian. Defendant contends that, under the correct test, a person who is not an enrolled member of any tribe or pueblo may still be recognized as an Indian, satisfying the second requirement, based on other factors, and that the district court erred by failing to consider how those factors apply to his case. Whether lack of enrollment is dispositive is a legal question we review de novo. *See Frank*, 2002-NMSC-026, ¶ 10.

**{10}** Contrary to the district court's ruling, lack of enrollment as a member of a tribe or pueblo, although relevant, is not dispositive; a person need not be enrolled to be recognized as an Indian. *See Stymiest*, 581 F.3d at 764 (explaining that tribal enrollment "is not essential and its absence is not determinative"); *Bruce*, 394 F.3d at 1225 (recognizing that neither lack of enrollment nor lack of eligibility to enroll is dispositive); *Prentiss*, 273 F.3d at 1283 ("[T]he fact that a person is not a member of a particular pueblo does not establish that he or she is not an Indian."); *cf. United States v. Antelope*, 430 U.S. 641, 646 n.7 (1977) (noting, in dicta, that "enrollment in an official tribe has not been held to be an absolute requirement for federal jurisdiction, at least where the Indian defendant lived on the reservation and maintained tribal relations with the Indians thereon" (internal quotation marks and citation omitted)).

**{11}** Rather than treating enrollment as essential, courts have weighed multiple factors to determine whether a person has been recognized as an Indian for purposes of the test's second requirement, which is designed to measure whether the person "has a sufficient non-racial link to a formerly sovereign people." *Bruce*, 394 F.3d at 1224 (internal quotation marks and citation omitted). Over three decades ago, in *St. Cloud v. United States*, 702 F. Supp. 1456, 1461 (D.S.D. 1988), a federal district court "gleaned from case law several factors to evaluate" when examining the second requirement. The court concluded that courts should consider "[i]n declining order of importance[:]" (1) "enrollment in a tribe"; (2) "government recognition formally and informally through providing the person assistance reserved only to Indians"; (3) "enjoying benefits of tribal affiliation"; and (4) "social recognition as an Indian through living on a reservation and participating in Indian social life." *Id.* The court explained that "[t]hese factors do not establish a precise formula for determining who is an Indian" but instead "merely guide the analysis[.]" *Id.* Elaborating on the role of the first factor, the court observed that

"courts have found tribal enrollment alone sufficient proof that a person is an Indian[,]" but that "a person may still be an Indian though not enrolled with a recognized tribe." *Id.* Several federal and state jurisdictions have adopted multifactor tests based on *St. Cloud.*[3] *See Zepeda*, 792 F.3d at 1113-14; *Stymiest*, 581 F.3d at 764; *State v. George*, 422 P.3d 1142, 1145-46 (Idaho 2018); *State v. LaPier*, 790 P.2d 983, 986 (Mont. 1990); *State v. Nobles*, 818 S.E.2d 129, 136-40 (N.C. Ct. App. 2018); *State v. Daniels*, 16 P.3d 650, 653-54 (Wash. Ct. App. 2001). Although not all of these jurisdictions use precisely the same test,[4] the State has not cited—and our independent research has not unearthed—precedent from any jurisdiction treating lack of enrollment as dispositive.

**{12}** Based on these authorities, we conclude that enrollment as a member of a recognized tribe or pueblo is not a mandatory prerequisite for Indian status, and that whenever a person is not enrolled, the court must consider other factors to determine whether the second requirement—tribal or federal recognition as an Indian—is satisfied. We therefore hold that the district court erred by concluding that Defendant's lack of enrollment as a member of the Mescalero Apache Tribe is dispositive and by failing to consider other pertinent factors.

**{13}** The parties invite us to perform the requisite multifactor analysis in the first instance, but we decline to do so because, on the limited record before us, performing that analysis would entail fact-finding. *See Blaze Constr. Co. v. N.M. Taxation & Revenue Dep't*, 1994-NMSC-110, ¶ 24, 118 N.M. 647, 884 P.2d 803 ("It is well established that an appellate court will not find facts on appeal."); *State v. Gonzales*, 1999-NMCA-027, ¶ 9, 126 N.M. 742, 975 P.2d 355 ("It is a bedrock principle of appellate practice that appellate courts do not decide the facts in a case."). Because the district court concluded that lack of enrollment as a tribal member was dispositive, it did not make any factual findings regarding the other relevant factors. On appeal, both parties ask us to consider the scant stipulations they made in the district court, which do not adequately address the factors. Defendant proffered additional relevant facts, including that he is an "affiliate" of the tribe and that he attended school on the reservation, gets his medical care on the reservation, and has had criminal cases adjudicated in tribal court. The State did not dispute any of these facts in the district

---

3Some courts have concluded that the *St. Cloud* factors are not exhaustive. *See Stymiest*, 581 F.3d at 764 (concluding that "the *St. Cloud* factors may prove useful, depending upon the evidence, but [that] they should not be considered exhaustive"). The Eighth Circuit and the Ninth Circuit have recognized additional factors. *See id*. (concluding that the district court "properly identified two other factors relevant on the facts of this case—that the tribe exercised criminal jurisdiction over [the defendant]" and that the defendant "held himself out to be an Indian"); *Bruce*, 394 F.3d at 1227 (concluding that it was significant that a tribal court had exercised jurisdiction over the defendant because "the tribe has no jurisdiction to punish anyone but an Indian").

4For example, a circuit split has emerged about whether certain factors carry more weight than others. Echoing the *St. Cloud* court, the Ninth Circuit has held that the factors should be considered in "declining order of importance," *Bruce*, 394 F.3d at 1224, but the Eighth Circuit has held that the factors should not "be tied to an order of importance." *Stymiest*, 581 F.3d at 764. Because the parties have not briefed this issue or any other issue pertaining to differences between jurisdictions and because we need not resolve such issues to decide this appeal, we decline to reach them. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("It is of no benefit either to the parties or to future litigants for [an appellate court] to promulgate case law based on [its] own speculation rather than the parties' carefully considered arguments.").

court, relying instead on its categorical argument that enrollment is essential, but on appeal the State takes the position that no evidence supports the proffered facts. Defendant responds by asking us to take judicial notice of the affidavits he submitted in support of his motion to dismiss the criminal complaint for lack of jurisdiction. These circumstances warrant fact-finding, which we, as an appellate court, are not in a position to do. Because "[t]he vantage of the appellate bench is a poor one from which to assess credibility and perform other components of the fact-finding task[,]" *Gonzales*, 1999-NMCA-027, ¶ 13, "[f]act-finding is the task of the trial judge[.]" *Id.* ¶ 9. Accordingly, we remand the case to the district court so that it may fully address the government recognition requirement based on evidence pertinent to the applicable factors.

**{14}**   We acknowledge, as the State notes in its brief and as the district court concluded, that the district court had jurisdiction to adjudicate the petition to revoke Defendant's probation, even though the location of the alleged probation violations was in Indian country. However, the existence of such jurisdiction does not change the outcome of this appeal. No matter where a probationer's violation allegedly occurred—in Indian country, in a foreign nation, or in a state in the United States other than New Mexico—any revocation of probation must be based on a legally viable theory that the probationer's conduct violated at least one condition of his or her probation. In this case, although Defendant's conditions of probation apparently prohibited him from violating the laws of *any* jurisdiction, the State did not ask the district court to find that Defendant's conduct violated any laws of either the Mescalero Apache Tribe or the United States or that he was subject to prosecution by the United States for violating New Mexico law. Nor did the State ask the district court to find that Defendant violated any probation condition that is not tethered to compliance with the law. We have therefore limited our analysis to the narrow theory the State has chosen to pursue: that Defendant violated the condition of his probation that requires him to comply with the laws of New Mexico, and that he did so by being charged with two new crimes in state court. Because in this instance that theory is only valid if Defendant is not an Indian, and the district court relied on the wrong test to determine whether he is, we must reverse.

## CONCLUSION

**{15}**   We reverse the district court's ruling that Defendant is not an Indian and remand the case to allow the district court to reconsider that ruling in a manner consistent with this opinion. To facilitate any further appellate review that might be necessary, the district court should explain the legal and factual bases for its ruling on remand.

**{16}   IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**